Charles H. BLANCHARD, d/b/a Blanchard Construction Co., Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee.

Charles H. BLANCHARD, d/b/a Blanchard Construction Co., Appellant,

v.

UNITED STATES of America et al., Appellees.

Nos. 21107, 21111.

United States Court of Appeals Fifth Circuit.

Feb. 9, 1965.

Rehearing Denied March 12, 1965.

352

George E. Morse, Morse & Morse, Gulfport, Miss., for appellant.

James E. Hertz, Pensacola, Fla., for appellee St. Paul Fire & Marine Ins. Co.

Lawrence R. Schnieder, Atty., Dept. of Justice, Washington, D. C., Clinton Ashmore, U. S. Atty., Tallahassee, Fla., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., for the United States.

Before RIVES and WISDOM, Circuit Judges, and MORGAN, District Judge.

MORGAN, District Judge.

These appeals from the District Court were consolidated for the purpose of briefing and argument, and both cases having originated from the same transaction, in the interest of clarity and expediency, this Court will consider both appeals in this Opinion.[1]

Both cases grow out of a contract entered into on August 25, 1960, between Charles H. Blanchard, d/b/a Blanchard

---

[1]. No. 21,107, Charles H. Blanchard, d/b/a Blanchard Construction Co. v. St. Paul Fire and Marine Ins. Co., is an appeal from a decision denying the appellant relief under 60(b) (4), (5) and (6) of the Federal Rules of Civil Procedure. No. 21,111, Charles H. Blanchard, d/b/a Blanchard Construction Co. v. United States of America and St. Paul Fire and Marine Ins. Co., is an appeal from a decision dismissing the appellant's claim against appellee United States on the ground that the District Court lacked jurisdiction under the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346(b), 2671 et seq., and dismissing the appellant's claim against appellee St. Paul on the grounds of res judicata.

Construction Company (hereinafter referred to as "Blanchard") and the United States of America for the repair and modernization of airmen dormitories at Keesler Air Force Base, Biloxi, Mississippi. St. Paul Fire and Marine Insurance Company (hereinafter called "St. Paul") was the surety on Blanchard's performance bond. The contract was to be completed in 240 days, or by May 5, 1961. However, the completion date was extended by the United States until August 20, 1961. On July 18, 1961, the United States Contracting Officer terminated the contract for default in performance. Blanchard appealed to the Armed Services Board of Contract Appeals (hereinafter referred to as ASBCA).

Immediately upon the termination, the United States called upon St. Paul, as surety for Blanchard, to complete the contract. In order to mitigate the damages, St. Paul took over the contract for completion. In addition to the demand for takeover, St. Paul had the right to assume the contract under its Indemnity Agreement with Blanchard which contained a provision:

"The company shall have the right at its option and in its sole discretion—

"(a) To take possession of all or any part of the work of the said contract whenever, in its sole opinion, such action is desirable or necessary, and at the expense of the undersigned to complete or to contract for the completion of the same, or to consent to the reletting or completion thereof by the owner or obligee in said bond."

St. Paul's right under this contract provision is not questioned.

At the time St. Paul took over the project, Blanchard furnished St. Paul with a list of unpaid labor and material charges in the amount of $277,482.31 which St. Paul paid. St. Paul then completed the contract and did no work other than the work required by the contract between Blanchard and the United States.

On January 3, 1962, Blanchard filed suit against St. Paul in the District Court of the Northern District of Florida for an accounting. Blanchard alleged that there was $400,000.00 due on his contract with the United States and that St. Paul should have been able to complete the contract for $250,000.00, and he demanded in the action that St. Paul be required to account to him for the difference. St. Paul filed its answer denying the allegations of negligence and affirmatively pleaded that an accounting had been furnished Blanchard, and that the accounting showed Blanchard was indebted to St. Paul in the amount of $84,871.17, and St. Paul filed a counterclaim for this amount due on the basis of the Indemnity Contract between the parties.

Blanchard failed to file an answer to the counterclaim and, at the pre-trial hearing on April 17, 1962, was granted additional time by the District Court in which to make a responsive pleading. Blanchard then filed a motion to dismiss, motion for more definite statement, a motion to strike the counterclaim, and a motion for change of venue on the grounds that the action involved an action on a bond under the Miller Act, a reply to the counterclaim, and a motion for production of documents. Upon consideration of these motions, the Trial Court denied the motion to dismiss, the motion for change of venue, the motion for more definite statement, the motion to strike, and granted the motion for production of documents.

The trial of the case had been set at pre-trial on April 17, 1962, for May 22, 1962, and the Trial Court on May 1, 1962, confirmed the trial date. On May 7, 1962, Blanchard filed a motion for continuance on the grounds that the hearing in an action brought by him against the United States growing out of its contract termination was set for May 14, 1962, before ASBCA, and that due to the length of such trials, he would not be able to be present at the scheduled trial. The Trial Court continued the case, and trial was reset for August 20, 1962. Blanchard filed on August 16,

1962, another motion for continuance alleging that he was presently in litigation with the United States, that there were necessary documents to this litigation on file with ASBCA which were not available, and that he had pending certain other litigation in the Florida State Circuit Court on the date of August 20, 1962. The District Court denied Blanchard's motion for continuance and held that Blanchard's allegations in his motion were without merit, that the action was based on Blanchard's suit for accounting and St. Paul's countersuit on an Indemnity Contract and the case was set for trial. On August 20, 1962, the case went to trial on Blanchard's complaint for accounting and St. Paul's counterclaim on the contract for indemnity. Blanchard did not attend the trial. The Court, after hearing evidence, made its Findings of Fact and Conclusions of Law, and entered judgment for St. Paul on its counterclaim for the sum of $71,840.80 and $8,000.00 as attorneys' fees in accordance with the contract of indemnity. Blanchard filed a motion for a new trial on August 31, 1962, which was denied on September 13, 1962.

On September 14, 1962, the Court entered an order acknowledging the filing of Blanchard's "Amendment for a New Trial" ordering that said amendment be considered as a separate and distinct motion for a new trial. This "Amendment for a New Trial" filed by Blanchard was based on the grounds that ASBCA had ruled in his favor against the United States in his administrative proceedings. Blanchard's motion to withdraw his motion for a new trial was accepted by the Court, and the Court stayed execution of judgment until August 25, 1962, so that the Court could notify the United States Attorney in the event the United States had any interest in the case, and provided further that Blanchard refrain from transferring or encumbering any assets until satisfaction of the judgment or his posting of a bond. A bond was posted and then Blanchard filed a motion for relief from judgment under Rule 60(b) (4), (5) and (6) of the Federal Rules of Civil Procedure.

In his motion under Rule 60(b), Blanchard alleged that the judgment was void; that a prior decision being a quasi judgment of a quasi judicial body upon which the judgment entered in the cause has been reversed and/or it is no longer equitable that the judgment entered therein should have prospective application; and that the judgment was entered without the presence of a necessary and indispensable party, to-wit: the United States.

After hearing argument of counsel on Blanchard's motion for relief under the provisions of Rule 60(b), Federal Rules of Civil Procedure, the motion was denied on October 24, 1962, but the Court left in effect the stay of execution and bond in order that Blanchard could proceed with his litigation against the United States in the administrative proceeding.

On December 21, 1962, subsequent to the denial of his motion for relief under Rule 60(b) (4), (5) and (6), Federal Rules of Civil Procedure, Blanchard filed a new action against the United States and St. Paul in the District Court for the Northern District of Florida upon the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671 et seq.). In general, against the United States, Blanchard charged the United States and its servants with negligence, and claimed that, because of the tortious acts of the United States, St. Paul, as surety for Blanchard, was called upon to complete the contract and, as a result, St. Paul had a claim against Blanchard for a portion of the damages sought by Blanchard against the United States. A separate cause of action was filed against St. Paul for negligence in performing Blanchard's contract and interfering with the performance thereof. The complaint sought $210,140.84 as judgment against the United States and also demanded a like amount against St. Paul.

St. Paul filed a motion to dismiss the complaint against it on the grounds that the Court had previously entered a judgment for St. Paul based on the same

facts. St. Paul also filed a counterclaim against Blanchard under the Indemnity Agreement for damages arising out of payments it had made in behalf of Blanchard since entry of the original judgment. No answer has been filed by Blanchard to the counterclaim.

The United States moved to dismiss Blanchard's complaint upon the ground that the District Court lacked jurisdiction over the subject matter, and that the complaint failed to state a claim upon which relief could be granted.[2] Thereafter, the Court entered an order granting the motion to dismiss of both the United States and St. Paul.

Blanchard then filed appeals on both cases. The questions presented are whether: (1) the District Court erred in Case No. 21,107 by refusing Blanchard relief from the judgment of St. Paul under Federal Rules of Civil Procedure, 60(b) (4), (5) and (6); (2) the District Court erred in Case No. 21,111 in sustaining the United States' motion to dismiss Blanchard's claim filed under the Federal Tort Claims Act; and (3) the District Court erred in Case No. 21,111 by sustaining the motion to dismiss the claim of Blanchard on the grounds that the claim was res judicata.

We first consider the question of the denial to Blanchard of relief under Rule 60(b) (4), (5) and (6). The portion of the rule upon which Blanchard relies is as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void, (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. * * *". Rule 60(b) (4), (5) and (6), Federal Rules of Civil Procedure.

In the case at hand, Blanchard contracted with the United States and with St. Paul, as surety. Under the Indemnity Agreement between Blanchard and St. Paul, St. Paul had the right to take over all or any part of the work whenever in its opinion such action is desirable or necessary. When the United States terminated Blanchard's contract (with or without good cause), St. Paul had no alternative but to perform or be subject to the payment of actual damages. St. Paul had no recourse against the United States. St. Paul's only recourse was against Blanchard which it asserted by way of counterclaim when, on January 3, 1962, Blanchard filed a suit for accounting in an amount approximating $150,000.00. The case was pending at issue on February 12, 1962, after St. Paul filed its answer and counterclaim. Pre-trial was had and the issues fully explored with all counsel on April 17, 1962. A continuance was granted from May 22, 1962, until August 20, 1962, to enable Blanchard to attend a hearing of his claim before ASBCA. Blanchard at that time was pursuing independent actions against both St. Paul and the United States. Blanchard's application for continuance on various grounds was denied on August 16, 1962, and the case proceeded to trial on August 20, 1962, resulting in judgment for St. Paul on its counterclaim.

■ This Court is cognizant that Rule 60(b) is to be liberally construed to carry out the purpose of avoiding the enforcement of an erroneous judgment, but we can find no error in the denial of relief under this rule in the instant case. The action of Blanchard against St. Paul for negligence and an accounting thereon,

2. The United States urged that (1) the claim sounded in contract and therefore, did not fall within the purview of the Federal Tort Claims Act, and (2) the District Court lacked jurisdiction under the Tucker Act (28 U.S.C. § 1346(a) (2)) since the claim exceeded $10,000.-00 and, in addition, that the complaint joined the United States with another party defendant.

together with St. Paul's counterclaim against Blanchard for payments to suppliers and materialmen, and labor charges exceeding funds received from the United States by an amount approximating $85,-000.00, was a separate, independent, and distinct action from the claim of Blanchard before ASBCA for the wrongful termination of his contract with the United States. The issues as to whether suppliers, laborers, and subcontractors were payable in the action for accounting brought by Blanchard and in the counterclaim action by St. Paul were not and could not be determined by ASBCA. St. Paul was not and could not be a party to that proceeding. St. Paul's judgment was based on the contract of indemnity between Blanchard and St. Paul and not on any quasi judicial determination made by contracting authorities for the United States.

Blanchard alone had the remedy against the United States for wrongful termination in the administrative proceeding, and it is conceivable that St. Paul, not being a party to that proceeding, could be greatly prejudiced should Blanchard eventually recover from the United States and should St. Paul have its final judgment vacated under Rule 60(b), Federal Rules of Civil Procedure.

■ Under Rule 60(b) (5), supra, the District Court is empowered to relieve a party from final judgment when "it is no longer equitable that the judgment should have prospective application", or "(6) any other reason justifying relief from the operation of the judgment". Under this rule, Blanchard was not entitled to such relief as a matter of right and certainly not where no equitable grounds for relief were established by him. Elgin National Watch Company v. Barrett, (5 Cir., 1954) 213 F.2d 776.

■ Counsel for Blanchard rely upon the case of Michigan Surety Company v. Service Machinery Corp., (5 Cir., 1960) 277 F.2d 531. This case is distinguishable from the case at hand. In Michigan Surety, the Florida Circuit Court dissolved an attachment and recovery was had on the attachment bond. Thereafter, the Florida Circuit Court was reversed by the Florida District Court of Appeals. This Court held that relief should have been granted by the District Court to the surety under Rule 60(b), as the judgment, if permitted to stand, would permit a recovery on a claim which had been extinguished. The facts in this case are inapposite. Blanchard, in this case, filed an action for negligence and accounting against St. Paul, and St. Paul filed a counterclaim under the indemnity bond. The issues between them were resolved by judgment. The favorable administrative decision which Blanchard later obtained against the United States for the wrongful termination of his contract should not entitle Blanchard to relief under Rule 60(b), supra. Blanchard's relief, if any, should be against the United States under the Tucker Act (28 U.S.C. §§ 1346(a) (2), 1491). The District Court did not err in refusing Blanchard relief under Rule 60(b) (4), (5) and (6), Federal Rules of Civil Procedure.

The second question (Case No. 21,111) which concerns the Court is whether the District Court erred in dismissing Blanchard's claim against the United States filed under the Federal Tort Claims Act. Is Blanchard's claim against the United States a claim that is essentially one sounding in contract and thus not cognizable in the District Court under the Tort Claims Act?

The Federal Tort Claims Act, 62 Stat. 933, 982, as amended, 28 U.S.C. §§ 1346 (b), 2671 et seq., provides in pertinent part:

*28 U.S.C. § 1346(b):*

"Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omis-

sion of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The Tucker Act, 24 Stat. 505, as amended, 28 U.S.C. §§ 1346(a) (2), 1491, provides in pertinent part:

*28 U.S.C. § 1346(a) (2):*

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

*28 U.S.C. § 1491:*

"The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

\* \* \* \* \* \*

■ The gravamen of Blanchard's complaint is that "the United States Government through its agents, servants and employees wrongfully interfered with the performance of \* \* \* [his] contract"

with the United States by "hampering" him in six different respects from completing the work undertaken. Blanchard alleged that as a result of this "legal interference with contract" he incurred extra costs and damages in the amount of $210,140.84.

As the language in the complaint makes clear, this claim is grounded essentially in contract and plainly does not come within the coverage of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. Woodbury v. United States, 313 F.2d 291 (C.A. 9); see also Smith v. United States, 324 F.2d 622 (C.A. 5). The District Court was therefore clearly correct in ordering that Blanchard's claim against the United States be dismissed.

■ The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., was designed, with certain exceptions, to "remove the sovereign immunity of the United States from suits in tort. \* \* " Richards v. United States, 369 U.S. 1, [1] 82 S.Ct. 585, 7 L.Ed.2d 492. Uppermost in the mind of Congress when it waived this immunity were the ordinary common law torts. Of these, the example which is reiterated in the legislative history for submitting the United States to tort liability " 'is negligence in the operation of vehicles' ". Dalehite v. United States, 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427.[3]

■■ That claims based upon breach of contract are wholly alien to the Tort Claims Act is beyond question. Woodbury v. United States, 192 F.Supp. 924 (D.Ore.), affirmed, 313 F.2d 291 (C.A. 9). As early as 1887, Congress surrendered the Government's sovereign immunity on claims based upon contracts which are expressed or implied in fact,

3. The "tortious" acts allegedly committed by the Government and its agents in the instant case consist of: (1) insisting that 30 lb. felt be installed in the latrines; (2) demanding that additional deteriorated wood be removed from the building site; (3) urging that lumber treated with a certain compound be used; (4) requiring that metal lockers be installed in a specific way; (5) failing to specify within a reasonable time the electrical charges to be made; (6) terminating the agreement for default. While these allegations may state a cause of action for a breach of contract, it is axiomatic that the breach of one's own contract is not a tort. Prosser, Torts, § 106, p. 728 (2d Ed. 1955).

by enacting the Tucker Act, 24 Stat. 505, as amended, 28 U.S.C. § 1491. Today, the Tucker Act constitutes the sole basis for a suit against the United States sounding in contract and exclusive jurisdiction is in the Court of Claims if, as here, the amount in issue exceeds $10,-000.00. As the Court of Appeals for the Third Circuit recently stated (Drake v. Treadwell Construction Co., 3 Cir., 299 F.2d 789, 791, vacated on other grounds, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136):

> "The generalized consent of the United States to be sued in contract appears in the Tucker Act, 28 U.S.C. § 1491. But the Tucker Act divides jurisdiction over claims against the United States, whether founded on express or implied contract, between the Court of Claims and the district courts. Only claims for less than $10,000 are cognizable in the district courts. * * *"

■ It is settled that claims such as that asserted by Blanchard here—which are founded upon an alleged failure to perform explicit or implicit contractual obligations—are not deemed "tort" claims for the purposes of the division between Tort Claims Act and Tucker Act jurisdiction. This is so irrespective of whether the plaintiff chooses to characterize the failure in terms of "negligence" upon the part of the contracting officer or other government officials.

Woodbury v. United States, 313 F.2d 291 (C.A. 9), is directly in point. In Woodbury, the plaintiff had organized a corporation to sponsor a project of constructing prefabricated housing at a Naval Base. The Federal Housing Administration and the Federal National Mortgage Association had, respectively, issued commitments to insure and to purchase the mortgages on the houses to be constructed. The Housing and Home Finance Agency made a loan to the plaintiff's corporation while construction was under way. Harassed by financial difficulties, plaintiff's corporation, contrac-

tors, subcontractors and the Housing and Home Finance Agency entered into a "completion agreement" providing for completion of the project and payment of claimants, creditors and completion costs in a prescribed order. Timely completion of the project was not made and the commitments of both F.H.A. and F.N.M.A. expired. The plaintiff brought suit under the Federal Tort Claims Act in the District of Oregon for $853,676.82 for breach of an implied fiduciary obligation of the Housing and Home Finance Agency to arrange for or provide long-term financing.

The District Court dismissed the action for lack of jurisdiction and the Ninth Circuit affirmed. While not disputing the plaintiff's contention that breach of fiduciary duty is a tort, even though the duty is created by contract, the Court concluded that the claim did not come within the ambit of the Tort Act (313 F.2d 294–295).

At the outset of its discussion, the Ninth Circuit pointed to the fact that the law to be applied under the Tort Claims Act differs from that which governs Tucker Act suits (Id. at 295):

> "It has long been established that the law to be applied in construing or applying provisions of government contracts is federal, not state law. [Citing cases.] It is clear to us that, on principle, federal law must govern the interpretation and application of a contract which is the basis for jurisdiction in an action under the Tucker Act, and it has been so held. (Girard Trust Co. v. United States, 3 Cir., 1945, 149 F.2d 872, 874). The Federal Tort Claims Act expressly provides for liability of the United States for torts 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred'. (28 U.S.C. § 1346(b)). Under this Act, therefore, state law, not federal law, controls."

Thus (ibid.):

"[T]o permit the result here sought would give to the plaintiff not only a choice of forum (district court rather than Court of Claims where over $10,000 is sought), but also a choice of law."

Also relevant is this Court's own recent decision in United States v. Smith, 5 Cir., 324 F.2d 622, in which the Court reversed a Tort Claims Act judgment based upon the allegedly negligent failure of a government contracting officer to require a prime contractor to post a payment bond pursuant to the Miller Act, 40 U.S.C. § 270a. In the course of its opinion, this Court quoted with approval (324 F.2d at 625) Woodbury.

The rationale of Woodbury, thus approved by this Court in Smith, applies with particular force to this case. As the complaint plainly reflects, the sole relationship between Blanchard and the United States was wholly contractual in character. It is equally clear from the face of the complaint that Blanchard's asserted grievance relates exclusively to the manner in which various government officials—in particular the contracting officer and the termination officer—performed their responsibilities with respect to the execution of the contract. Blanchard does not, as he cannot, dispute that, in the words of the Ninth Circuit adopted by this Court, "the claim is in substance a breach of contract claim." As a consequence, it clearly falls outside the reach of the Tort Act.

The final question to be decided is whether the District Court erred in Case No. 21,111 by sustaining the motion of St. Paul in dismissing the claim of Blanchard on the grounds that the action was res judicata.

The doctrine of "res judicata" is that a cause of action finally determined between the parties on the merits by a Court of competent jurisdiction cannot again be litigated by new proceedings before the same or any other tribunal, the judgment or decree so rendered being a complete bar to any subsequent action on the same claim or cause of action between the same parties or those in privity with them, and extending not only to questions actually decided, but to all grounds of recovery or defense which might have been presented. Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970; Kelliher v. Stone & Webster, (5 Cir., 1935) 75 F.2d 331; United States v. Burch, (5 Cir., 1961) 294 F.2d 1. The action of Blanchard against St. Paul in his first complaint alleging wrongful overpayment to suppliers of labor and materials, and St. Paul's illegal retention of an amount approximating $150,000.00 under the surety contract between the parties, together with the defense and counterclaim of St. Paul and the judgment of the District Court on the issues foreclosed a later action by Blanchard against St. Paul for alleged acts of negligence growing out of the same contract of suretyship between the same parties.

The judgments in both cases, No. 21,107 and No. 21,111, are affirmed.

