FILED
United States Court of Appeals
Tenth Circuit

January 5, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNION PACIFIC RAILROAD
COMPANY,

       Plaintiff - Appellee,

  v.

UNITED STATES OF AMERICA, ex
rel. U.S. ARMY CORPS OF
ENGINEERS,

       Defendant - Appellant.

No. 08-7102

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:06-CV-00094-KEW)**

---

Sarang V. Damle, Attorney, Appellate Staff, Civil Division (Michael F. Hertz, Acting Assistant Attorney General, Sheldon J. Sperling, United States Attorney, Thomas M. Bondy, Attorney, Appellate Staff, Civil Division, with him on the briefs), Washington, D.C., for Defendant - Appellant.

George R. Mullican (Robert D. Hart and Christopher D. Wolek, with him on the brief), Gibbs Armstrong Borochoff Mullican & Hart, P.C., Tulsa, Oklahoma, for Plaintiff - Appellee.

---

Before **MURPHY**, **EBEL,** and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

On May 23, 2003, a train owned and operated by the Union Pacific Railroad Company derailed when metal culverts beneath the tracks collapsed. The train had been traveling along the shoreline of Lake Eufaula, a man-made lake in eastern Oklahoma created as part of a United States Army Corps of Engineers project (the Project). Construction of the Project had required the relocation of existing railroad tracks and rail facilities belonging to the Missouri-Kansas-Texas Railroad Company, Union Pacific's predecessor-in-interest. Under a contract (the Contract) between the railroad and the government to execute the relocation, the railroad gave the government certain land and rights-of-way, and the government agreed to build new rails and rail facilities, including the culverts at issue in this case. A clause in the Contract (the Exculpatory Clause) stated that the railroad would hold harmless and release the United States from any liability arising out of the construction, operation, or maintenance of the Project.

In March 2006 Union Pacific filed suit against the United States in the United States District Court for the Eastern District of Oklahoma under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq. Union Pacific's complaint blamed the government for the derailment. It claimed (1) that the government negligently breached the Contract by installing metal culverts, which were prone to erosion, rather than culverts made of more durable reinforced concrete; and (2) that the government had negligently failed to inspect and maintain the culverts, contributing to their collapse. The government moved

to dismiss the suit, arguing that the case fell under the exclusive jurisdiction of the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), because the action sounded in contract rather than tort. The district court denied the government's motion.

A bench trial was conducted in October 2007. The district court ruled that because the government had constructed the culverts with metal rather than reinforced concrete, it had "breached the duty established under Oklahoma law which it owed to Union Pacific through its predecessor to perform the contract with due care and engineering skill." *Union Pac. R.R. Co. v. United States ex rel. U.S. Army Corps of Eng'rs*, No. CIV-06-094-KEW, 2008 WL 3926395, at *8 (E.D. Okla. Aug. 26, 2008). It also ruled that the government owned the land on which the culverts were constructed and therefore "had a duty to maintain the property it owned such that the railroad's operation was not affected." *Id.* at *11. It found that the government had breached this duty by failing to inspect or maintain the culverts. Finally, the court held that the Exculpatory Clause was unenforceable because it violated Oklahoma public policy, and it awarded Union Pacific $4,456,606.70 in damages.

We reverse. The Tucker Act deprived the district court of jurisdiction over the negligent-breach-of-contract claim because it was a contract claim under the exclusive jurisdiction of the Court of Federal Claims. And the negligent-

-3-

inspection-and-maintenance claim was barred by the Exculpatory Clause, which did not violate Oklahoma public policy.

## II.   DISCUSSION

### A.   Subject-Matter Jurisdiction/Negligent-Breach-of-Contract Claim

The United States is immune from suit except when it expressly consents. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Two specific waivers of sovereign immunity are relevant in this case:  the FTCA, which waives the government's immunity for tort claims, and the Tucker Act, which waives the government's immunity for, among other things, contract claims.

Union Pacific contends that jurisdiction over its claims is proper under the FTCA.  The FTCA permits the United States to be sued in federal district court for damages

> caused by the negligent or wrongful act or omission of any employee
> of the Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with the
> law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  There is no dispute about the exercise of FTCA jurisdiction over Union Pacific's negligent-inspection-and-maintenance claim. But the government asserts that the district court lacked jurisdiction over the

negligent-breach-of-contract claim. That claim, the government argues, must be brought in the Court of Federal Claims under the Tucker Act. We agree.[1]

The federal district courts and the Court of Federal Claims have concurrent jurisdiction over claims up to $10,000 "against the United States . . . founded . . . upon any express or implied contract with the United States." *Id.* § 1346(a)(2). But under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over such claims exceeding $10,000. *See id.* § 1491(a)(1); *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009).

Because Union Pacific's claim exceeds $10,000, the question before us is therefore whether Union Pacific's negligent-breach-of-contract claim is founded upon a contract (in which case jurisdiction would be proper only in the Court of Federal Claims) or should be considered a tort claim coming under the FTCA (in which case jurisdiction would be proper in federal district court). Union Pacific has pleaded its claim as one of negligence, characterizing it as a tort claim. But we are not bound by Union Pacific's characterization. *See Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997) ("the Court of Federal Claims' exclusive jurisdiction may not be avoided by" artful framing of a complaint); *Hall*

_____

[1]Union Pacific contends that in district court the government conceded jurisdiction over this claim under the FTCA and is therefore judicially estopped from challenging jurisdiction on appeal. The government denies that it conceded jurisdiction, but resolution of this dispute is unnecessary. The conduct of the parties cannot confer subject-matter jurisdiction where it is lacking, either as a matter of consent or estoppel. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

-5-

*v. United States*, 274 F.2d 69, 71 (10th Cir. 1959) (plaintiff could not avoid the jurisdictional limits of the FTCA by characterizing his claim as one for negligence when it was really a claim for misrepresentation, which is excluded from the FTCA); *LaPlant v. United States*, 872 F.2d 881, 882 (9th Cir. 1989) ("[T]he language of appellants' complaint, which casts its claim for relief in terms of tort rather than contract, cannot be determinative in our inquiry."), *withdrawn, replaced on reh'g*, 916 F.2d 1377 (9th Cir. 1989); *Putnam Mills Corp. v. United States*, 432 F.2d 553, 554 (2d Cir. 1970) (per curiam) ("Plaintiff's attempt to classify his cause of action as a prima facie tort does not suffice to avoid the jurisdictional inhibitions on claims in deceit or contract.").

In close cases, whether to characterize a claim as one in tort or as founded on contract will depend on the purpose served by the characterization. Our analysis in this case must therefore be informed by an understanding of how and why contract claims against the government are processed differently than tort claims in the federal courts. Under the FTCA not only are tort claims handled in the various federal district courts, but also the applicable law may vary widely because the government's liability is determined under state law—the law "of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In contrast, contract claims are handled in a more uniform manner. To begin with, state law is not relevant to the interpretation of a federal contract; the court applies federal contract law rather than state law to determine the government's liability. *See*

*United States v. City of Las Cruces*, 289 F.3d 1170, 1186 (10th Cir. 2002) ("'The obligations to and rights of the United States under its contracts are governed exclusively by federal law.'" (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988))); 14 Charles Alan Wright et al., Federal Practice and Procedure § 3657 & n.30 (3d ed. 1998); 17A James Wm. Moore et al., Moore's Federal Practice ¶ 124.42 (3d ed. 2008). Moreover, decision-making authority in contract disputes is more concentrated within the judicial system. All substantial claims (those exceeding $10,000) must be litigated in the Court of Federal Claims. *See* 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). And even though Congress has permitted claims under $10,000 to be brought in the federal district courts so that plaintiffs with these lesser claims are not burdened by having to litigate in the District of Columbia (where the Court of Federal Claims sits), *see United States v. Hohri*, 482 U.S. 64, 67 n.1 (1987), those claims are reviewed on appeal only in the Federal Circuit, which also hears all appeals from the Court of Federal Claims, *see* 28 U.S.C. § 1295(a)(2), (3); *Hohri*, 482 U.S. at 68. This centralization of judicial authority in Tucker Act cases has an obvious purpose—uniformity. *See Hohri*, 482 U.S. at 73 (noting Congress's "strong expressions of the need for uniformity in" Tucker Act claims). As a result, the federal government can use the same language in its contracts throughout this nation and be confident that it will have the same contractual rights and obligations everywhere.

With this understanding, we turn to the specific cause of action alleged by Union Pacific. It claims that the United States committed the Oklahoma tort of negligent performance of a contract. The Oklahoma Supreme Court has explained this tort as follows: "Accompanying every contract is a common-law duty to perform . . . with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1232 (Okla. 1981). It is essential to recognize the intimate connection between the tort and the contract. As stated in *Keel*, tortious negligent breach of contract is also a breach of the contract. If there is no breach of the contract, there is no tort. One cannot say that a contracting party has committed the tort of negligent breach of contract by failing to perform a particular act if the contract, properly construed, does not require the party to perform that act.

Given the nature of the tort of negligent breach of contract, it is apparent that recognizing this cause of action as a tort claim under the FTCA would undermine the Tucker Act's policy in favor of uniform construction of federal contracts. If one who contracts with the United States government can sue for negligent breach of contract under the FTCA, which applies state substantive law, then the government's duties under its contracts will be governed, at least in part, by state law rather than by uniform federal law. For example, under a particular contract entered into by the government, federal law may say that the government

-8-

does not have to do X; but if state law says that doing X is required as part of the government's "duty to perform the contract with care, skill, reasonable experience and faithfulness," then the private party to the contract could sue the government for negligent breach of contract under the FTCA for failure to do X. Of course, the government could then modify its contracts to specify explicitly that it need not do X and thereby avoid such a lawsuit in the future (recall that there can be no tort suit for negligent breach of contract if there is no breach of the contract). But the whole point of having a uniform (federal) interpretation of government contracts is to avoid the necessity of having to consider disparate state laws when devising contract language. *See Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963) (noting "the long established policy that government contracts are to be given a uniform interpretation and application under federal law, rather than being given different interpretations and applications depending upon the vagaries of the laws of fifty different states").

The case before us well illustrates the point. The negligent breach of contract alleged by Union Pacific is the government's failure to construct the culverts out of reinforced concrete rather than metal. A judgment under the FTCA in favor of Union Pacific would necessarily be based upon a determination that Oklahoma law would interpret the Contract to require reinforced-concrete construction. Perhaps application of federal law would result in the same interpretation of the Contract. But perhaps it would require the contrary

interpretation. If so, permitting Union Pacific to pursue its negligent-breach-of-contract tort claim under the FTCA would lead to a result that contradicts federal contract law. Classifying Union Pacific's negligent-breach-of-contract claim as a contract claim avoids this result.

We find support for this analysis in decisions by other circuits that have similarly treated contract-based tort claims. The Ninth Circuit's decision in *Woodbury* is illustrative. Woodbury's corporation, which was constructing housing in Alaska, obtained from the federal Housing and Home Finance Agency (HHFA) a construction loan guaranteed by Woodbury. *See Woodbury*, 313 F.2d at 293. After HHFA initiated foreclosure proceedings, Woodbury sued the government under the FTCA for breach of fiduciary duty, a tort, alleging that the government had refused to adopt a long-term strategy for the benefit of all parties with an interest in the project. *See id.* at 294. Although the court assumed that the HHFA's contracts created the asserted fiduciary duty, it said that the alleged tort was "based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim." *Id.* at 295. The court observed that permitting Woodbury to sue in tort under state law (1) would defeat the policy of giving government contracts uniform interpretation and application under federal law, *see id.* at 295–96, and (2) would defeat the policy of construing "'the entire statutory system of remedies against the Government to make a

-10-

workable, consistent and equitable whole,'" *id.* at 296 (quoting *Feres v. United States*, 340 U.S. 135, 139 (1950)). Because Woodbury's claim was essentially one for breach of contract, it had to be brought under the Tucker Act. *See id.*

The Fifth Circuit followed *Woodbury* in *Blanchard v. St. Paul Fire & Marine Insurance Co.*, 341 F.2d 351 (5th Cir. 1965). Blanchard sued the government under the FTCA on a claim that the government had negligently and tortiously interfered with his company's performance of a contract to construct dormitories on a military base. *See id.* at 357. The alleged tortious acts included insisting on installation of certain materials in the latrines and requiring that metal lockers be installed in a certain way. *See id.* n.3. The Fifth Circuit held that the claim should have been brought under the Tucker Act. It observed that "the sole relationship between Blanchard and the United States was wholly contractual in character" and that his claims "relate[d] exclusively to the manner in which various government officials . . . performed their responsibilities with respect to the execution of the contract." *Id.* at 359. Agreeing with *Woodbury*, it said that "[i]t is settled that claims . . . founded upon an alleged failure to perform explicit or implicit contractual obligations . . . are not deemed 'tort' claims for the purposes of the division between Tort Claims Act and Tucker Act jurisdiction." *Id.* at 358.

Similarly, the Second Circuit cited *Woodbury* with approval in *Putnam Mills Corp.*, 432 F.2d at 554. The plaintiff supplied nylon to a manufacturer of

parachutes for the government. The manufacturer obtained a loan from the Small Business Administration (SBA), and the plaintiff alleged that the SBA had agreed to hold the loan funds in escrow to guarantee payment to the plaintiff in case the manufacturer defaulted. When the plaintiff was not paid, it sued under the FTCA to have the SBA declared escrowee of the loan proceeds to the extent of the amount owed the plaintiff and to have the SBA pay the plaintiff the balance owed it. *See id.* The court, citing *Woodbury*, concluded that the plaintiff could not circumvent the Tucker Act by characterizing its cause of action (which might "well entitle it to recovery in contract") as one for prima facie tort. *Id.*

The Federal Circuit is in accord. The plaintiff in *Wood v. United States*, 961 F.2d 195 (Fed. Cir. 1992), attended an auction of airplanes forfeited to the government. The auctioneers, who were agents of the government, assured the plaintiff that two of the airplanes had FAA airworthiness certificates. *See id.* at 196. He won the bid on one of the planes and was assigned the winning bid on the other, but an airworthiness certificate was not provided for either plane. The plaintiff sued the government in federal district court, alleging, in addition to several contract claims, tort claims under the FTCA for negligence, conversion, and replevin. The district court, relying on the Tucker Act, found subject-matter jurisdiction lacking and transferred the case to the United States Claims Court (the prior name of the Court of Federal Claims, *see Delay v. Gordon*, 475 F.3d 1039, 1041 n.5 (9th Cir. 2007)). *See id*. at 197. On appeal from the district court,

the Federal Circuit affirmed, noting that the tort claims "arise from the same facts as the contractual claims and in fact, are mere surplusage," and that the "primary thrust" of the plaintiff's claim was breach of contract. *Id.* at 198. It adopted from *Woodbury* the proposition that if a "claim is 'essentially for breach of a contractual undertaking, and the liability, if any, depends wholly on the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.'" *Id.* (quoting *Woodbury*, 313 F.2d at 296).

More recently, the Federal Circuit took the same approach in *Awad v. United States*, 301 F.3d 1367 (Fed. Cir. 2002). The plaintiff reached an oral agreement with the U.S. Attorney to testify against a terrorist in exchange for U.S. citizenship and a U.S. passport. Under the agreement the plaintiff gave up his Swiss/Lebanese passport and entered a witness-protection program. After testifying, the plaintiff was unable to get his old passport back, and he obtained U.S. citizenship only later and "largely through his own efforts." *Id.* at 1370. He sued in federal district court for breach of contract and on a number of tort causes of action, including false imprisonment (because he could not leave the United States without his old passport until he became a citizen), intentional infliction of emotional distress, bad-faith breach of contract, negligence, and conversion. Although he "use[d] terminology appropriate for a tort claim," *id.* at 1374, and contended that his tort claims were "completely independent from any contractual

relationship," *id.* at 1373, the court held that he could not bring his claims under the FTCA. Following *Wood*, it said that "'if an action arises primarily from a contractual undertaking, jurisdiction lies in the Court of Federal Claims regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.'" *Id.* at 1374 (quoting *Wood*, 961 F.2d at 198) (brackets and further internal quotation marks omitted). And it cited *Wood*, *Blanchard*, and *Woodbury* in support of the proposition that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000." *Id.* at 1372; *cf. id.* at 1371–72 (noting statement in *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988), that Tucker Act jurisdiction is exclusive "to the extent that Congress has not granted any other court authority to hear the claims.").

Union Pacific claims to have contrary authority supporting its position, but we are not persuaded. One case in which a circuit court rejected the government's argument that a contract-related claim could not be brought under the FTCA is *Aleutco Corp. v. United States*, 244 F.2d 674 (3d Cir. 1957). The facts in that case are interesting. Aleutco purchased surplus war property in the Navy's custody in Alaska. The contract required removal of the property by November 1948, and provided that if Aleutco did not remove the property by the required date, the government, upon 15 days' written notice, could treat the

-14-

property as abandoned and sell it. *See id.* at 675. The deadline, however, was extended to October 1949, and in March 1951 the Navy granted permission for Aleutco to send a ship to pick up the remaining property purchased. *See id.* at 676. Later communications also suggested that the property could still be picked up; but in July 1952 the Navy, without notifying Aleutco that it intended to treat the property as abandoned, shipped the property to California and sold it. *See id.* at 676–77, 680. Aleutco sued for conversion under the FTCA. *See id.* at 677. The district court held that it had jurisdiction and the Third Circuit affirmed. The analysis of the appellate court was rather abbreviated. It failed to note any reason why contract and tort claims should be treated differently in the federal courts. On the contrary, observing that as a result of the recent enactment of the FTCA (in 1946) the "immunity of the United States to suit [no longer] depended upon the distinction between tort and contract," it reasoned that there was thus no need for "strict enforcement of the distinction." *Id.* at 679. It concluded that "there is no policy in the law which requires that the forum of the district court be denied a plaintiff who pleads and proves a classic case in tort." *Id.* We would not adopt this analysis because it ignores the policy reasons for uniform treatment of contract claims against the government. Moreover, *Aleutco* is a closer case than the one before us. As *Woodbury* noted, "[T]he contract [in *Aleutco*] was not the essential basis of the claim—rather, it came into the case as a claimed defense on behalf of the government, which asserted that [Aleutco], by breach of contractual

-15-

arrangements with the government, had forfeited its right to the property." 313 F.2d at 296–97. The case before it was distinguishable from *Aleutco*, said the *Woodbury* court, because (as with Union Pacific's claim) Woodbury could not prevail without proving a "wrongful breach" of "an express or implied promise by the government." *Id.* at 297. It is particularly telling that in a post-*Aleutco* case, the Third Circuit quoted *Woodbury* at length in rejecting FTCA jurisdiction for a claim that the government had wrongfully delayed in closing an agreed financing of a construction project. *See Petersburg Borough v. United States*, 839 F.2d 161, 162 (3d Cir. 1988). We suspect that the Third Circuit would decide that a claim like Union Pacific's negligent-breach-of-contract claim could not be brought under the FTCA.

The other appellate opinion to which Union Pacific directs our attention is *Love v. United States*, 915 F.2d 1242 (9th Cir. 1990). In *Love* the Ninth Circuit held that there was FTCA jurisdiction over the plaintiffs' claim for breach of the duty of good-faith performance of a contract, a tort under Montana law. *Id.* at 1247. Although we question whether we would adopt the full reasoning of *Love*, we need not resolve that point here because the court reaffirmed its *Woodbury* holding that the Tucker Act governs when "the 'tort' complained of is based *entirely* upon a breach by the government of a promise made by it in a contract," *id.* at 1247 (quoting *Woodbury*, 313 F.2d at 295), which is the situation before us. *Love* distinguished *Woodbury* on the ground that the duty imposed by the

Montana tort "exists apart from, *and in addition to*, any terms agreed to by the parties." *Id.* at 1247–48 (internal quotation marks omitted; emphasis added). Perhaps *Love* is saying that a tort claim under the FTCA can be based on a contractual duty implied by law (rather than explicitly agreed to by the parties). If so, however, we disagree for the reasons already stated. *Cf. Love v. United States*, 944 F.2d 632, 633–38 (9th Cir. 1991) (O'Scannlain, J., dissenting from denial of rehearing en banc). Uniformity of interpretation of federal contracts would be unattainable if contractual terms could be implied as a matter of state law. *See Blanchard*, 341 F.2d at 358 ("It is settled that claims . . . founded upon an alleged failure to perform explicit or *implicit* contractual obligations . . . are not deemed 'tort' claims for the purposes of the division between Tort Claims Act and Tucker Act jurisdiction." (emphasis added)); *Awad*, 301 F.3d at 1372 (citing *Blanchard* with approval on the same point).

Our conclusion and reasoning are not inconsistent with our recent decisions in *Robbins v. U.S. Bureau of Land Management*, 438 F.3d 1074 (10th Cir. 2006), and *Normandy Apartments*, 554 F.3d 1290. As summarized in *Normandy Apartments*, we held in those cases that

> when a party asserts that the government's breach of contract is contrary to *federal* regulations, statutes, or the Constitution, and when the party seeks relief other than money damages, the APA's waiver of sovereign immunity applies and the Tucker Act does not preclude a federal district court from taking jurisdiction.

554 F.3d at 1300 (emphasis added). Here, of course, we have a very different sort of claim: Union Pacific is seeking only money damages and is not relying on any duty created by *federal* law. We recognize that we said in those cases that "'[t]he classification of a particular action as one which is or is not "at its essence" a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'" *Id.* at 1299 (quoting *Robbins*, 438 F.3d at 1083). Perhaps one could assert that the "the source of the right" of Union Pacific's negligent-breach-of-contract claim is Oklahoma tort law rather than the Contract. But we do not think that the quoted language can assist Union Pacific. First, as noted above, under Oklahoma law there can be a negligent breach of contract only if there is a breach of contract; the source of Union Pacific's negligent-breach-of-contract claim would therefore seem to be Oklahoma contract law. Second, and perhaps more importantly, the test that we applied in *Robbins* and *Normandy* was for distinguishing federal contract claims from other federal-law claims. In that context there is no basis for concern about having to apply the distinct laws of 50 states to determine the federal government's duties under one of its contracts. But when our task is distinguishing a federal contract claim from a state-law claim, we must give due weight to the strong policy in favor of construing federal contracts under uniform federal law. Accordingly, we believe that when a state-law cause of action (be it constitutional, statutory, regulatory, or common-law) amounts to the imposition

-18-

on the government of an implied contractual duty—a duty that arises out of, and exists only because of, the contract between the plaintiff and the government—the cause of action should be characterized as one "founded . . . upon [an] express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). We emphasize that this proposition does not excuse the federal government from compliance with all state law. Far from it. For example, as in this case, the federal government is still subject to liability under the FTCA for violation of its duties of care as a landowner. That duty is independent of any contractual relationship between the government and Union Pacific.

In sum, because we conclude that Union Pacific's negligent-breach-of-contract claim is founded upon a contract, the district court lacked jurisdiction under the FTCA to entertain this claim. As a contract claim seeking more than $10,000 in damages, jurisdiction is proper only in the Court of Federal Claims under the Tucker Act.

### B. The Negligent-Maintenance Claim

There remains Union Pacific's claim for negligent inspection and maintenance. The government argues that the claim is barred by the Contract's Exculpatory Clause. The clause provides that the railroad

> release[s] and agree[s] to save and hold the Government harmless from any and all causes of action, suits at law or equity, or claims or demands, or from any liability of any nature whatsoever for and on account of any damages to the lands conveyed and utilities relocated

-19-

hereunder, or in any way growing out of the construction, operation and maintenance of the Project.

Aplt. App. at A116. This language unambiguously encompasses "claims . . . growing out of the . . . maintenance of the Project." We agree with the government that the clause bars Union Pacific's claim.

The district court did not question the scope of the clause's language. Its reason for refusing to enforce the clause was that it believed the clause to be contrary to Oklahoma public policy. On appeal the government argues that Oklahoma public policy is irrelevant because federal law governs the interpretation and validity of the clause. But it failed to preserve this argument for appellate review. Not only did the government not raise this issue in the district court, but it argued in its trial brief that Oklahoma law applied to the FTCA claim, without noting any limitations on that application. We therefore decline to address the government's argument that federal law governs. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) ("This Court will not consider a new theory advanced for the first time as an appellate issue, even a theory that is related to one that was presented to the district court.").

Nevertheless, we hold that the clause is enforceable in this case even under Oklahoma law. "Whether the district court correctly interpreted the law and public policy of Oklahoma . . . is a matter that we review de novo." *Horace*

*Mann Ins. Co. v. Johnson*, 953 F.2d 575, 576 (10th Cir. 1991). The Supreme Court of Oklahoma has counseled that courts should void contract clauses on public-policy grounds "rarely, with great caution and in cases that are free from doubt." *Shephard v. Farmers Ins. Co.*, 678 P.2d 250, 251 (Okla. 1984). Generally, exculpatory clauses will be enforced if the following conditions are met: (1) the clause "clear[ly] and unambiguous[ly]" exonerates the defendant with respect to the claim; (2) there was "no vast difference" in the bargaining power of the parties when they entered into the contract; and (3) enforcement of the clause will not violate public policy. *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996) (emphases omitted).

Union Pacific does not dispute that the first two conditions were satisfied. It argues only that enforcement of the clause would violate public policy. Under Oklahoma law, enforcement of an exculpatory clause would violate public policy if the clause "patently would tend to injure public morals, public health or confidence in the administration of the law[,] . . . [or] destroy the security of individuals' rights to personal safety or private property." *Id.* at 875. Union Pacific advances two arguments why this test is met. First, it argues that because the culverts helped prevent flooding in the City of Eufaula, enforcing the clause would let the government avoid liability to members of the public for any potential flooding damages resulting from its negligence, thereby injuring public health. We disagree. Although the Exculpatory Clause states that Union Pacific

-21-

"release[s]," Aplt. App. at A116, certain claims against the government (and therefore cannot sue the government on such a claim), it does not bar members of the public from suing the federal government. It provides only that Union Pacific would have to hold the government harmless if such a suit were brought. Union Pacific has not attacked the hold-harmless clause or argued that the indemnification provision encourages the government to act without due care. *Cf. Elsken v. Network Multi-Family Sec. Corp.*, 838 P.2d 1007, 1011 (Okla. 1992) (upholding a hold-harmless clause as consistent with Oklahoma public policy); *Fed. Rural Elec. Ins. Corp. v. Williams*, Nos. 97,043 & 97,051, 2002 WL 31041863 at *4 (Okla. Civ. App. 2002) (same). In any event, enforcing the Exculpatory Clause with respect to a claim by the railroad itself—the contracting party—hardly upsets any public policy.

Union Pacific's second argument is that two Oklahoma state statutes—the Oklahoma Floodplain Management Act, Okla. Stat. tit. 82, § 1602 (2008), and the Oklahoma Dam Safety Act, Okla. Stat. tit. 82, § 110.2 (2008)—have expressed a strong public policy favoring flood prevention. But Union Pacific fails to identify any reason why enforcing the Exculpatory Clause in this case would run counter to the policies expressed in either of these statutes, and we cannot discern any. The Floodplain Management Act, which "recognizes the personal hardships and economic distress caused by flood disasters," Okla. Stat. tit. 82, § 1602, "was adopted in order to mitigate against the hazards caused by flooding and to qualify

-22-

citizens for coverage under the Federal flood insurance program." *Wilkerson v. City of Pauls Valley*, 24 P.3d 872, 875 (Okla. Civ. App. 2001). And the Dam Safety Act, which recognizes that "reasonable regulation of such construction, operation and maintenance [of dams] is beneficial and necessary for the public health and welfare and to protect lives and property," was intended to "reaffirm and clarify . . . the dam safety program of the Oklahoma Water Resources Board." Okla. Stat. tit. 82, § 110.2. Given that the Exculpatory Clause does not affect the public at large, Union Pacific has failed to convince us that this is a case where it is "free from doubt" that we should invalidate the clause. *Shephard*, 678 P.2d at 251. The clause therefore bars relief on Union Pacific's negligent-inspection-and-maintenance claim.

## III. CONCLUSION

We REVERSE the judgment of the district court and REMAND (1) for dismissal without prejudice of Union Pacific's negligent-breach-of-contract claim for lack of jurisdiction and (2) for entry of judgment in favor of the United States on Union Pacific's negligent-inspection-and-maintenance claim.