# United States Court of Appeals for the Federal Circuit

---

**GLADYS S. VANDESANDE,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-5012

---

Appeal from the United States Court of Federal Claims in case no. 09-CV-258, Judge Edward J. Damich.

---

Decided: March 23, 2012

---

RODERICK V. HANNAH, of Davie, Florida, argued for plaintiff-appellant.

HILLARY A. STERN, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, of United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director, and DAWN E. GOODMAN, Trial Attorney.

---

Before NEWMAN, PLAGER, and LINN, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This is a dispute between the Government and a federal employee over whether a "Stipulation Agreement Regarding Damages," resulting from a settlement of an earlier personnel case, is a contract, a consent decree, or perhaps both. The label we put on it dictates the court that will have jurisdiction to hear the case on its merits, a necessary predicate to a judicial determination of whether the Stipulation Agreement (hereafter "Stipulation Agreement" or "Agreement") was breached by the Government as the employee alleges. This dispute is yet another example of the wastefulness of litigation over where to litigate.

Plaintiff-Appellant, Ms. Gladys S. VanDesande, entered into the Stipulation Agreement with the approval of the Equal Employment Opportunity Commission ("EEOC") to resolve Ms. VanDesande's Title VII pregnancy discrimination claim against her employer, the United States Postal Service ("USPS"). She later filed suit in the Court of Federal Claims alleging that the Government breached that Agreement.

The Court of Federal Claims, at the Government's behest, held that it did not possess jurisdiction to hear Ms. VanDesande's claim because the Stipulation Agreement was a consent decree, not a contract. On appeal, Ms. VanDesande argues that, whatever else it may be, the Agreement is a contract for purposes of enforcement. Thus we must determine the legal status of the Stipulation Agreement.

Though there is precedent on both sides of this argument, we conclude that the trial court erred by holding the Stipulation Agreement not enforceable as a

contract within the jurisdiction of the Court of Federal Claims; accordingly, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

We begin by briefly summarizing the lengthy and tortured history of this case. To fully detail its course through the several federal agencies and courts during the numerous years it has been in dispute (nearly a decade and a half) would unduly extend the opinion, and it might be confused with *Jarndyce v. Jarndyce*.[1]

Ms. VanDesande in 1998 and 1999 filed a series of complaints with the USPS, her employer, and subsequently with the EEOC, alleging that the USPS had violated the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (amending Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16). Before the EEOC, the complaints were consolidated into a bifurcated proceeding, in which the question of liability was first addressed. On the question of liability, the EEOC issued an Order finding that the USPS had discriminated and retaliated against Ms. VanDesande.

On the question of damages, the parties entered into the Stipulation Agreement, at issue here, which settled that phase of the proceeding substantially in her favor. On June 23, 2003, the EEOC issued a Final Order, closing the case, which incorporated the Stipulation Agreement by reference. The USPS then issued a Notice of Final Action adopting the EEOC's order.

Later in 2003, Ms. VanDesande notified the USPS that she believed the agency had breached the Stipulation Agreement. The USPS, in a Final Decision dated

---

[1]     *Jarndyce v. Jarndyce* is the Chancery suit around which the plot of Dickens's *Bleak House* (1853) revolves.

November 4, 2003, denied Ms. VanDesande's claim. She appealed the denial to the EEOC. Several years went by before the EEOC issued its decision, in which it found that Ms. VanDesande had not met her burden of showing that the USPS failed to comply with the Stipulation Agreement. Ms. VanDesande requested reconsideration, and on May 17, 2006, the EEOC denied the request and informed Ms. VanDesande of her right to file a civil action in an appropriate United States District Court.

Ms. VanDesande then filed an action for breach of the Stipulation Agreement in the District Court for the Southern District of Florida. In response to that lawsuit, the Government filed a Motion for Summary Judgment in which it argued that the District Court lacked subject matter jurisdiction over Ms. VanDesande's complaint because it was "a contract claim within the meaning of the Tucker Act." Defendant's Motion for Summary Judgment and Memorandum of Law at 6, *VanDesande v. Potter*, No. 06-61263 (S.D. Fla. Mar. 28, 2007). According to the Government, because Ms. VanDesande's claim for monetary damages exceeded $10,000, "[t]he United States Court of Federal Claims has exclusive jurisdiction over Plaintiff's monetary claims for breach of the Stipulation Agreement . . . against the Postal Service." *Id.* Following an unsuccessful attempt at a mediated settlement, the parties stipulated to a voluntary dismissal of the case, which was entered on May 31, 2007.

In July of 2007, the USPS unilaterally terminated Ms. VanDesande's employment (the Stipulation Agreement had included a lump sum payment to her in exchange for her resignation). Believing her termination was wrongful because the USPS had not yet complied with part of the Stipulation Agreement, Ms. VanDesande submitted another breach notice to the USPS. After the USPS failed to timely respond, Ms. VanDesande again appealed to the

EEOC. On February 5, 2008, the EEOC issued its decision in which it found that Ms. VanDesande had not shown that the USPS failed to comply with the Stipulation Agreement, and again informed Ms. VanDesande of her right to file a civil action in an appropriate District Court.

On May 8, 2008, Ms. VanDesande once again filed suit in the District Court for the Southern District of Florida, this time seeking *de novo* adjudication of her Title VII pregnancy discrimination claim under 42 U.S.C. § 2000e-16(c). In an order issued February 18, 2009, the District Court granted the Government's motion to dismiss the case as untimely. The court determined that Ms. VanDesande was required to file her civil action for a *de novo* trial of the underlying discrimination complaint within 90 days of receiving the USPS's Notice of Final Action on those charges, presumptively the 2003 USPS Notice of Final Action adopting the EEOC's order. Thus the court concluded that Ms. VanDesande's action was time-barred.

Ms. VanDesande, adopting the Government's position in her first District Court suit that the agreement is a contract and can be enforced only in the Court of Federal Claims, then filed on April 24, 2009, a complaint for breach of contract in the Court of Federal Claims; this is the suit that brought the case here. As indicated above, the Government in this suit again moved to dismiss the case for lack of subject matter jurisdiction. Now, however, in sharp contrast to its original stance before the District Court, the Government argued before the Court of Federal Claims that the Stipulation Agreement is *not* a contract but a consent decree, enforcement of which is not within the jurisdiction of the Court of Federal Claims under the Tucker Act. *VanDesande v. United States*, 94 Fed. Cl. 624, 629 (Fed. Cl. 2011). The Court of Federal

Claims, after a review of the conflicting precedents on the issue, agreed with the Government and granted the motion. Ms. VanDesande timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

The issue on appeal is the determination by the Court of Federal Claims that it lacks subject matter jurisdiction over Ms. VanDesande's claim for breach of contract by the Government. We review determinations of the Court of Federal Claims regarding its jurisdiction without deference. *Wheeler v. United States*, 11 F.3d 156, 158 (Fed. Cir. 1993).

## I.

When parties to a dispute arrive at an agreement that settles the dispute, the resulting agreement will generally have the characteristics of a contract: "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty." Restatement (Second) of Contracts § 1 (1981). A party alleging a breach of the contract may bring an action in a court of competent jurisdiction for legal or equitable remedies. *Id.* at § 345. In some cases, however, a dispute settles only after it becomes a matter of court proceedings. If the parties later negotiate a settlement agreement and that agreement is incorporated into a court decree that terminates the judicial proceeding, determining where to bring an action for enforcement can become a point of dispute. The question that arises in such cases is whether the parties must enforce their agreement through the trial forum that issued the decree, or whether they may pursue a separate action for breach of contract in any suitable court.

Typically, the court that issues a consent decree will retain jurisdiction to enforce it, *see, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994), and often the settlement agreement that led to the decree will so specify. Even if the matter is not clearly addressed in advance, in many cases the same court will have jurisdiction regardless of whether the theory for enforcement is a breach of contract or breach of a judicial decree.

In the federal system, however, when the United States is the defendant the difference between enforcement of a court decree by the issuing forum and enforcement of a settlement agreement through a separate suit for breach of contract becomes a matter of critical importance. It can determine which court in the system is empowered to decide the dispute.

For example, if the United States is a party to a contract that the Government is alleged to have breached, and the claim is for more than $10,000, the exclusive forum for the suit is in the Court of Federal Claims for the damages claimed to have resulted from the breach. *Compare* 28 U.S.C. §§ 1346(a)(2) *with id.* 1491(a)(1). Thus, when viewed simply as a contract, a breach of a settlement agreement involving damages of more than $10,000 is within the Tucker Act jurisdiction of the Court of Federal Claims. *See Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011).

But what if the claim against the Government is based not on a settlement agreement per se, but on a settlement agreement that has been incorporated into a judicial or administrative order, in the form, for example, of a consent decree? Does the non-breaching party have the option to pursue a remedy in the Court of Federal Claims under the Tucker Act, or does jurisdiction for

enforcing such an agreement rest solely in the hands of the tribunal that issued the order?

This is a matter of first impression in this court, and, as this case exemplifies, parties wishing to enforce such agreements with the Government require answers to these questions in order to know which forums are available. For nearly nine years Ms. VanDesande has been seeking enforcement of her Stipulation Agreement with the Government. As we have explained, she first brought an enforcement suit against the Government in the District Court for the Southern District of Florida. Then when that failed, and her subsequent attempt to get *de novo* review was blocked, she took her complaint to the Court of Federal Claims as the Government had instructed. Here the Government reversed field and argued that her suit was actually one for enforcement of a decree, and not after all a contract claim within the jurisdiction of the Court of Federal Claims. That court agreed with the Government and dismissed the case. The result of all this, if the Government gets its way, is to leave Ms. VanDesande with no judicial forum able to hear her complaint.[2]

---

[2]    In the Southern District of Florida, the Government took the position that EEOC regulations contemplate just such an outcome. *See* Defendant's Motion for Summary Judgment and Memorandum of Law, *supra*, at 10. According to the Government, "[t]here is no provision [under EEOC regulations] that allows a federal employee to bring an enforcement action in district court if the EEOC has determined that the agency is in compliance with the EEOC's Final Order." *Id.* While there may not be an EEOC regulation that expressly authorizes judicial enforcement actions, the absence of an agency regulation does not per se determine the jurisdiction of a federal court to hear an appeal from the agency. Indeed, the regulations provide that "[a] complainant *may* petition

We put aside for later consideration the possible consequences of the Government's attempt to win this case by taking inconsistent positions in two different federal courts. This fast footwork by the Government not only imposed further delay and litigation costs on a citizen trying to obtain relief in the nation's courts, but caused a case of ping-pong among the courts themselves, with a resulting waste of judicial resources.

We turn then first to the substance of this appeal. To resolve it, we must review the Court of Federal Claims's twin holdings: that consent decrees and settlement agreements are mutually exclusive, and that the Stipulation Agreement in this case is a consent decree over which jurisdiction is lacking.

## A.

In *Holmes v. United States*, we held that "Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement," and thus jurisdiction properly lay in the Court of Federal Claims. 657 F.3d at 1317. The question *Holmes* left unanswered, however, since it was not before the court, was whether the Court of Federal Claims also has jurisdiction over Title VII consent decrees. *Id.* at 1316. The trial court, recognizing that "inquiry into consent decree *vel non* would be academic if the Stipulation Agreement, despite its incorporation into the Final Order of the [EEOC], nevertheless obtained or retained the status of an

---

the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction." 29 C.F.R. § 1615.305(a) (emphasis added). Thus, the regulations clearly do not confine enforcement actions to the EEOC, as the Government contends. Simply because an employee chooses to initially pursue enforcement through the EEOC does not preclude her from later seeking enforcement in a court of competent jurisdiction.

independent legal agreement between the parties," *VanDesande*, 94 Fed. Cl. at 630, requested additional briefing from the parties on the question of whether settlement agreements and consent decrees are inherently mutually exclusive.

After reviewing the submissions and the way courts have treated similar agreements in other cases, the trial court concluded that an action for breach of contract no longer exists "if the contract alleged is a settlement agreement that has been incorporated in a consent decree entered by another court or administrative entity." *Id.* at 632. After reviewing the same materials, we conclude otherwise.

In *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986), the Supreme Court was asked to determine the legal status of a Title VII consent decree. The Court applied a flexible approach in which it declined to be cabined by labels. *See id.* at 519 ("The question is not whether we can label a consent decree as a 'contract' or a 'judgment,' for we can do both."). Instead, the Court noted that the legal status of a consent decree depends on the purpose of the litigation. *Id.* ("this Court's cases do not treat consent decrees as judicial decrees in all respects and for all purposes").

The issue in *Local No. 93* was whether a district court's consent decree settling a Title VII race discrimination case was an "order" for purposes of section 706(g), which prohibits any "order of the court" from providing relief to individuals who were not victims of discrimination. The Court concluded that for such purposes, the contractual nature of Title VII consent decrees trump their nature as judicial acts. Specifically, the Court emphasized Congress' intention that "voluntary compliance . . . be the preferred means of achieving the

objectives of Title VII" and that the "voluntary nature of a consent decree is its most fundamental characteristic." *Id.* at 515 and 521. Indeed, the Court noted that "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Id.* at 522. Thus, the Court concluded that consent decrees are not judicial orders for the purposes of section 706(g) of Title VII. *Id.* at 521.

The trial court in its opinion noted that despite highlighting the "contractual resemblance" of Title VII consent decrees, "nothing in the [*Local No. 93*] decision established that violation of the terms of a consent decree could be litigated separately and solely as a breach of contract." *VanDesande*, 94 Fed. Cl. at 631. That statement is correct as far as it goes, since that issue was not before the Court. What *Local No. 93* establishes, however, is that consent decrees and settlement agreements are not, as a matter of law, mutually exclusive, and "[t]he fact that a consent decree *looks* like a judgment entered after a trial" does not control whether the consent decree is treated as a court order. *Local No. 93*, 478 U.S. at 523 (emphasis in original). Instead, the legal status of a Title VII consent decree will depend upon the nature of the case.

The Government cites to the analysis employed by our sister circuits of consent decrees under the Prison Litigation Reform Act ("PLRA"). *See Rowe v. Jones*, 483 F.3d 791 (11th Cir. 2007); *Benjamin v. Jacobson*, 172 F.3d 144 (2d Cir. 1999) (*en banc*). Even assuming they had the power to undercut the position of the Supreme Court taken in *Local No. 93*, we are not persuaded that these cases are so inconsistent. *Benjamin* and *Rowe* both involved actions under the PLRA's "termination provision," 18 U.S.C. § 3623(b). The terms "consent decree" and "private settlement agreement" are

specifically defined in the PLRA, and termination proceedings are limited to the former. Based on the PLRA's specific treatment of consent decrees and settlement agreements, both courts concluded "that Congress sought to make *the Act's concepts* of consent decrees and private settlement agreements mutually exclusive." *Benjamin*, 172 F.3d at 157 (emphasis added); *see also Rowe*, 483 F.3d at 796 (citing *Benjamin*). But neither court suggested that the PLRA's bright-line distinction between consent decrees and settlement agreements reflects the "plain definitions" of those terms that are broadly applicable to other areas of law, and Congress provided no indication that the statutorily-derived mutual exclusivity would extend beyond the PLRA. Thus, we do not view these cases as detracting from the Supreme Court's flexible approach for determining the legal status of Title VII consent decrees found in *Local No. 93*.

We also are unpersuaded that the other cases discussed in the trial court's opinion establish that consent decrees and settlement agreements are mutually exclusive for all purposes, especially enforcement. The trial court's conclusion that they are mutually exclusive was based in large part on an opinion from this court, *Blodgett v. United States*, No. 96-5067, 1996 WL 640238 (Fed. Cir. 1996), which cited a Supreme Court decision, *United States v. Swift & Co.*, 286 U.S. 106 (1932), for the premise that "a decree entered upon consent is a judicial act and is not a contract." *Blodgett*, 1996 WL 640238 at *1. As the trial court correctly observed, however, *Blodgett* was a nonprecedential opinion of this court, and therefore is not binding on subsequent decisions.

Furthermore, because the portion of *Swift* cited in *Blodgett* was not essential to the Court's decision in that case, it is also nonbinding dictum. *Swift* involved a

consent decree between the Government and certain meat packers that enjoined the meat packers from conducting certain activities that the Government alleged violated the Sherman Antitrust Act, 15 U.S.C. § 4. *Swift*, 286 U.S. at 111. When a district court modified the consent decree 11 years later, a group of wholesale grocers intervened, arguing that the modifications constituted a breach of the parties' underlying contractual obligations. *Id.* at 114. The Supreme Court rejected the interveners' argument "that a decree entered upon consent is to be treated as a contract and not as a judicial act" but also noted that "[a] different view would not help them, for they were not parties to the contract, if any there was." *Id.* at 115.

Thus in *Swift*, determining that the consent decree should not be treated as a contract was not essential to the Court's disposition of the interveners' claim. Beyond that, the *Swift* opinion can be seen as less than wholly consistent regarding the judicial act and contract paradigms of a consent decree. Despite the Court's insistence that a consent decree is a judicial act, it nonetheless recognized that consent judgments have certain elements of a bargain. *Id.* at 116-17. In fact, the test the Court adopted in *Swift* for modifying a consent decree was essentially a contractual one: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation *with the consent of all concerned*." *Id.* at 119 (emphasis added). In view of *Swift*'s internal inconsistencies, and because it was not essential for the Court to find that the consent decree "was not a contract as to any one," we decline to give stare decisis effect to statements taken from *Swift* suggesting that consent decrees are not to be treated as contracts.

More importantly, our view of *Swift* is consistent with several later opinions from the Supreme Court acknowl-

edging the hybrid nature of consent decrees as both contracts and judicial acts. For example, in *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975), the Government brought an action against a manufacturer of baked goods seeking imposition of civil penalties for the manufacturer's alleged violation of a Federal Trade Commission consent order prohibiting certain activities that allegedly violated the Sherman Antitrust Act. In a footnote, the Court acknowledged that "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees or, in this case, administrative orders. . . . Because of this dual character, consent decrees are treated as contracts for some purposes but not for others." *Id.* at 237. After reviewing its treatment of similar consent decrees in other cases, the Court concluded that "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." *Id.* at 236 (citing *Hughes v. United States*, 342 U.S. 353 (1952), *United States v. Atl. Ref. Co.*, 360 U.S. 19 (1959), and *United States v. Armour & Co.*, 402 U.S. 673 (1971)). We are not the first to observe that these post-*Swift* decisions cast further doubt on the statements in *Swift* that consent decrees are to be treated as judicial acts, not contracts.[3]

---

[3]    Scholars have reconciled the apparent conflict between the Court's initial view of consent decrees in *Swift* and its later view in *Hughes*, *Atlantic Refining*, *Armour*, and *ITT* by noting that the *Swift* Court treated consent decrees as judicial acts for the purposes of modification, consistent with the "time-honored principle that an injunction is always subject to adaptation on a showing of changed circumstances," Milton Handler, *Twenty-Fourth Annual Antitrust Review*, 72 Colum. L. Rev. 1, 28 (1972), while *Hughes*, *Atlantic Refining*, *Armour*, and *ITT* treated consent decrees as contracts for purposes of construction.

The trial court took a somewhat narrower view of the *ITT* line of cases, seeing them as "merely establish[ing] that in certain contexts consent decrees are to be analyzed or interpreted according to contract principles, but not necessarily that they are also contracts separate from their existence as judicial orders." *VanDesande*, 94 Fed. Cl. at 631. What the trial court failed to give sufficient weight to, however, is that a fundamental issue in any contract enforcement proceeding is whether, absent enforcement, the non-breaching party will have received the benefit of her bargain. As a result, the application of contract concepts lies at the heart of any claim for enforcement in such a case. Indeed, the *ITT* Court noted that "a consent decree or order is to be construed *for enforcement purposes* basically as a contract . . . ." *ITT*, 420 U.S. at 238 (emphasis added). Thus, the *ITT* line of cases supports a conclusion that settlement agreements, even if they are incorporated into judicial or administrative consent decrees, should be viewed for enforcement purposes as having the attributes of a contract.

Indeed, to hold otherwise is inconsistent with the well-established rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). The Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). In

*See also* Thomas M. Mengler, *Consent Decree Paradigms: Models Without Meaning*, 29 B.C. L. Rev. 291, 331 (1988).

*Holmes*, we held that a Title VII settlement agreement is a contract for purposes of Tucker Act jurisdiction. *See Holmes*, 657 F.3d at 1312. If, however, a settlement agreement was no longer enforceable as a contract once incorporated into a consent decree, the effect would be to divest the Court of Federal Claims of its Tucker Act jurisdiction by the simple act of a court or agency adopting the agreement. We are unaware of any act of Congress that would allow for such an outcome.

For all of these reasons, and contrary to the first of the trial court's conclusions in this case, we hold that consent decrees and settlement agreements are not necessarily mutually exclusive.

## B.

This leads to the second of the trial court's conclusions, that the Stipulation Agreement in this case is not a contract within the jurisdiction of the Court of Federal Claims. The Government takes the position that the Agreement is nothing other than an EEOC order, and thus a consent decree over which the Court of Federal Claims lacks jurisdiction. However, having determined that the relationship between these two labels is not a mutually exclusive one, we have no difficulty in concluding that the Stipulation Agreement in this case is a contract for enforcement purposes.

Even if the name, "Agreement," was not enough, the record establishes that the Agreement has all the indicia of a contract: "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981). Furthermore, the circumstances under which the Agreement was entered into by the parties to it, and its extensively detailed terms, leave little doubt about its

legal character.[4]   Thus, we agree with the opinion of another of our sister circuits that a settlement agreement, even one embodied in a decree, "is a contract within the meaning of the Tucker Act." *Angle v. United States*, 709 F.2d 570, 573 (9th Cir. 1983) ("The trial court then held that the Settlement Agreement, which is embodied in the decree of the Claims Commission, is a 'contract' within the meaning of the Tucker Act.  Again, we agree.").

## II.

Finally, we take note of the Government's attempt to win this case by taking entirely irreconcilable positions regarding the jurisdiction of the federal courts to hear Ms. VanDesande's case.   We recognize that the position initially taken in the District Court was under the United States Attorney for that district, whereas the position later taken in this court was determined by the Department of Justice's civil division attorneys here in Washington, D.C.   Nevertheless, both groups are part of the United States Justice Department, and it was the latter office that did the flip-flop.

The Justice Department, regardless of which of its offices is last to speak, is responsible to ensure that justice is more than what is in a name.   As noted during oral argument, this court considers the Government's conduct in this case unacceptable and should not be how our Government handles itself.  "It is as much the duty of the Government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between

---

[4]   The Stipulation Agreement included compensation for back pay and lost overtime; lost sick and annual leave; interest payments; tax consequence payments; payments for pain and suffering; medical and other expenses; and, as earlier noted, a lump sum payment in exchange for Ms. VanDesande's resignation.

private individuals." President Abraham Lincoln, Annual Message to Congress 1861 (quoted in Cong. Globe, 37th Cong., 2d Sess., Pt. IV, App. at 2 (1962), and engraved in the façade of this court's building). The Government's shifting positions have led to an unnecessary waste of money and judicial resources, and are manifestly unfair to the litigant.

Regrettably, this is not the first case in which the Government urged a district court to dismiss a case on the ground that jurisdiction belonged in the Court of Federal Claims and then, after suit was brought in the Court of Federal Claims, again urged dismissal on the ground that the Court of Federal Claims lacked jurisdiction.[5] We hope our decision today will reduce the prevalence of these "jurisdictional ping-pong" games, *see Christianson*, 486 U.S. at 818. The Government would be well advised to avoid taking positions in future litigations that open it up to the criticism that it has used its overwhelming resources to whipsaw a citizen into submission. At a minimum, the Government should consider an authoritative position on jurisdiction in cases such as this binding on the Government, just as appellate courts are encouraged by the Supreme Court to avoid wasteful jurisdictional litigation by accepting the jurisdictional determination of the first circuit that decides the jurisdictional issue. *Id.* at 819 ("Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.")

---

[5] *See, e.g.*, *Phillips v. United States*, 77 Fed. Cl. 513 (Fed. Cl. 2007), *Drury v. United States*, 52 Fed. Cl. 402 (Fed. Cl. 2002), and *Clark v. United States*, 229 Ct. Cl. 570 (Ct. Cl. 1981).

CONCLUSION

For all these reasons, we reverse the Court of Federal Claim's judgment of no jurisdiction, and we remand for further proceedings on Ms. VanDesande's breach of contract claim.[6]

REVERSED AND REMANDED

---

[6]    Since that claim has yet to have its day in court, we take no position on its merits.