**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 12–89C.

United States Court of Federal Claims.

Oct. 16, 2012.

Sarah L. Wilson, Covington & Burling LLP, Washington, D.C., for plaintiff. With her on the briefs were Christian J. Pistilli and Matthew S. Krauss, Covington & Burling LLP, Washington, D.C.

Scott Slater, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case stems from the alleged breach of a 1959 contract between the United States Government ("the government") and the Missouri, Kansas & Texas Railway Company ("the Katy").[1] The Katy was a predecessor-in-interest to the present plaintiff, Union Pacific Railroad Company ("Union Pacific"). The purpose of this contract was to enable the construction of a dam and reservoir by the United States Army Corps of Engineers ("the Corps") by making attendant modifications on the adjacent railway. See Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. A. In 1964, the Corps completed the project, and the modified railway track-age functioned without incident for many years. On May 23, 2003, however, a train owned and operated by Union Pacific derailed while traveling across a section of track that partially collapsed. Union Pacific determined that the accident was caused by the Corps' erroneous installation of two large culverts underneath the track. The culverts that had been installed were fabricated from metal rather than reinforced concrete as dictated by the contract. After a series of unsuccessful attempts to recover in tort (first through an administrative claim with the Corps, and subsequently via a complaint filed in the United States District Court for the Eastern District of Oklahoma), Union Pacific commenced an action for breach of contract in this court on February 9, 2012. See Compl. The government responded by moving for dismissal of the suit as untimely due to expiration of the six-year statute of limitations applicable generally to actions filed in this court. See Def.'s Mot. to Dismiss ("Def.'s Mot.") at 8 (citing 28 U.S.C. § 2501). The motion has been fully briefed, a hearing was held on September 20, 2012, and Union Pacific filed a supplemental brief on October 11, 2012. Based upon an examination of all possible dates of accrual for this cause of action, the government's motion to dismiss is granted.

## BACKGROUND [2]

### A. The Contract at Issue

On September 24, 1959, the Katy and the government entered into a contract in relation to the development of a flood control project called the Eufala Dam and Reservoir ("Eufala"). Compl., Ex. 1, at 1. To accommodate the resulting man-made lake, adjacent properties would have to be altered significantly. The Katy owned such an adjacent property on which it maintained railroad tracks and appurtenant facilities. After it

---

1. The railroad became known as "the Katy" because its early symbol for transactions on stock exchanges was "KT." Perhaps because of its name, history, or location, the Katy became a reference used in popular culture, see, e.g., the Blues Brothers song from 1980, "She Caught the Katy."

2. The recitations that follow do not constitute finding of fact by the court but rather are taken from the pleadings and from reported decisions of the United States District Court for the Eastern District of Oklahoma and the United States Court of Appeals for the Tenth Circuit that are susceptible to judicial notice. Unless otherwise noted, however, the factual circumstances appear to be undisputed.

became apparent that the Katy's property was vital to the completion of Eufala, the government and the Katy entered into the contract that gives rise to the present action. *See Union Pac. R.R. v. United States ex rel. United States Army Corps of Eng'rs,* 591 F.3d 1311, 1313 (10th Cir.2010).

The contract stipulated that the Katy would give to the government certain titles to and easements on property necessary for the completion of Eufala. Def.'s Mot. Ex. A (Contract with Owner for Relocation and Alteration of Facilities (Cost Reimbursable)) (Sept. 24, 1959) ("Contract"), at 2. Specifically, the government needed to acquire and relocate portions of the Muskogee and Wilburton Subdivisions of the Katy that would interfere with the development and eventual use of the dam and reservoir. *Id.* In exchange for the Katy's land and rights-of-way, the government agreed that the Corps would build new embankments for railroad tracks and facilities on the Katy's remaining property and that the new construction would be integrated with the Eufala infrastructure. *See Union Pac.,* 591 F.3d at 1313.

The contract set forth explicit criteria for the execution of the construction project. These specifications described how each aspect of the project was to be completed, including the installation of culverts for drainage underneath the embankments. According to the contract, culverts located below the power-pool elevation of 585.0 feet were to be constructed of monolithic, reinforced concrete, whereas culverts above such elevation could instead be made of corrugated metal pipe, depending upon the cross-sectional area of the pipe. Pl.'s Opp'n, Ex. A (Contract), at 7.[3] The contract also contained a release clause, providing that:

> [The Katy] agrees on completion of the relocation and/or alteration work provided herein, to accept the payment and the portion of the work to be performed by the [g]overnment provided for in Article 3 above as full and just compensation for any and all damages and injury that have been

caused or that may be caused to the facilities relocated hereunder by reason of the construction and maintenance of the Project by the [g]overnment; and upon final payment and completion of the work to be performed by the [g]overnment as herein provided, [The Katy] agrees to and does hereby release and agree to save and hold the [g]overnment harmless from any and all causes of action, suits at law or equity, or claims or demands, or from any liability of any nature whatsoever for and on account of any damages to the lands conveyed and utilities relocated hereunder, or in any way growing out of the construction, operation and maintenance of the [p]roject.

Contract at 29 (Art. 10).

The Contract was signed in 1959, and construction was completed by 1964. Def.'s Mot. at 9. Although the Katy was entitled under the Contract to have an engineer present during construction, the parties have not indicated whether this entitlement was ever acted on by the Katy. Compl. at 7. The source of this apparent uncertainty might reflect the fact that the Katy was ultimately succeeded in interest by the present plaintiff, Union Pacific. Compl. at 1. This transfer of interest and the passage of time appear to have left Union Pacific without a precise knowledge of what happened during construction. The complaint addresses the matter tangentially by asserting that even if a Katy engineer were present, "it would not have been apparent . . . that the [g]overnment had installed metal culverts improperly." Compl. at 7.

### B. *Accident and Investigation*

On May 23, 2003, a train identified as MKCFQ–21, owned by Union Pacific, derailed while crossing an area of track laid on an embankment constructed by the Corps. The train had been traveling adjacent to Lake Eufala and over a section of track supported in part by largely submerged culverts when the accident occurred. *See Union Pac.,* 591 F.3d at 1313.

---

**3.** The copy of the Contract appended to Def.'s Mot. does not include the exhibits to the Contract. The copy appended to Union Pacific's opposition, however, does include the exhibits. Consequently, subsequent citations to the Contract shall be to the complete version submitted with Union Pacific's opposition.

Following the accident, Union Pacific initiated an investigation into the cause of MKCFQ–21's derailment. This investigation was headed by Superintendent Norman Kirk and assisted by Union Pacific's engineer and expert on culvert design and performance, George Meyer. Def.'s Mot., Ex. B, Claim for Damage, Injury, or Death, on SF–95 (May 13, 2005) ("Admin. Claim"), Attach. 1 ("Basis of Claim"). Based on their investigation, Union Pacific determined that the sudden collapse of two culverts underneath the rails caused the accident. Compl. at 2–3. Specifically, the investigators concluded that the culverts collapsed because they were constructed of corrugated metal rather than monolithic, reinforced concrete as dictated by the contract. Compl. at 6. The culverts in question had apparently degraded through corrosion due to submersion in the fluctuating waters of the reservoir. The seven-foot tall culverts spanned an elevation of 580 to 587 feet, such that five feet of each culvert was below the line at which reinforced concrete should have been used under the terms of the contract. Compl. at 6.

During the course of Union Pacific's investigation, Mr. Kirk visited the site of the accident and personally viewed the culverts in question. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply"), Exhibit B (Dep. of Norman Kirk) (Jan. 18, 2005) ("Kirk Dep."), at 43:5–10. Mr. Meyer reviewed the contract and confirmed that, while the culverts had plainly been constructed of metal, the contract called for reinforced concrete. Def.'s Reply, Exhibit C (Dep. of George Meyer) (Jan. 18, 2005) ("Meyer Dep."), at 15:1–21. This information ultimately provided the basis of an administrative claim against the Corps. Def.'s Mot., Ex. B (Admin. Claim), Attach. 1 (Basis of Claim).

The administrative claim submitted by Union Pacific sought $4,456,606.70 in damages stemming from the derailment. *See* Admin. Claim. That claim was denied on April 11, 2007, citing Union Pacific's pending federal suit as the reason for the denial of administrative resolution. Pl.'s Opp'n, Ex. F (Letter from Charles D. Hayes, Jr. to George R. Mullican (Apr. 11, 2007)).

## PROCEDURAL HISTORY

In March 2006, Union Pacific filed suit in the United States District Court for the Eastern District of Oklahoma under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging negligent-breach-of-contract and negligent-inspection-and-maintenance claims. The government moved for dismissal based on lack of jurisdiction, urging that the United States Court of Federal Claims had exclusive jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), because the claim sounded in contract, not tort. The government's motion was denied, and the case proceeded to trial in October 2007. On August 26, 2008, the district court ruled in Union Pacific's favor, awarding a judgment of $4,456,606.70. *Union Pac. R.R. Co. v. United States ex rel. U.S. Army Corps of Eng'rs*, No. CIV–06–094–KEW, 2008 WL 3926395, at *12 (E.D.Okla. Aug. 26, 2008). The district court concluded that the government had breached its duty to Union Pacific to perform the contract with due care when it installed metal culverts instead of reinforced concrete culverts. *Id.* at *8. The court also held that the government had a duty to inspect and maintain the culverts, which it failed to perform. *Id.* at *11. The court refused to apply the release clause to exonerate the government from liability, on the ground that the clause was void as against Oklahoma public policy. *Id.* at *9–10.

The government appealed the district court's judgment to the Tenth Circuit, which reversed on January 5, 2010. The Tenth Circuit ruled that the negligent-breach-of-contract claim did, in fact, sound in contract and that the amount in controversy exceeded $10,000, thus giving the Court of Federal Claims exclusive subject matter jurisdiction under the Tucker Act. *Union Pac.*, 591 F.3d at 1320. It also held that the release clause was enforceable and that it effectively barred any claim for negligent inspection or maintenance. *Id.* at 1322. The judgment was reversed and the case was remanded to the district court with instructions to dismiss the negligent-breach-of-contract claim for lack of jurisdiction, and to enter judgment for the

government on the negligent-inspection-and-maintenance claim. *Id.*

On remand in the district court, Union Pacific moved for transfer to the Court of Federal Claims, which motion was denied on February 28, 2011. *Union Pac. R.R. v. United States ex rel. U.S. Army Corps of Eng'rs,* 2011 WL 835108 (E.D.Okla. Feb. 28, 2011). In denying the motion for transfer, the district court noted that the six-year statute of limitations for bringing suit in the Court of Federal Claims, 28 U.S.C. § 2501, had already expired. *Id.* at *2. The district court viewed this expiration, coupled with the Tenth Circuit's holding that the release clause was effective, as rendering futile any transfer from the district court to the Court of Federal Claims. *Id.* On appeal from this decision, the Tenth Circuit affirmed on November 10, 2011, based upon Union Pacific's failure to show good cause for its delay in seeking a timely transfer. *Union Pac. R.R. v. United States ex rel. United States Army Corps of Eng'rs,* 446 Fed.Appx. 975, 977 (10th Cir.2011).

Undeterred, Union Pacific commenced the instant action in this court on February 9, 2012. Compl. at 1. On June 7, 2012, the government filed its motion to dismiss the complaint for lack of jurisdiction due to untimeliness, which is presently before the court.

### STANDARD FOR DECISION

■ In this court, the statute of limitations is jurisdictional, not merely the basis for an affirmative defense. *See John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 134, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). Furthermore, the statute of limitations may not be waived by the parties and may be addressed *sua sponte* by this court if necessary. *See id.* "Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action." *OTI America, Inc. v. United States,* 68 Fed.Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). Accordingly, the government has moved to dismiss pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of

the Court of Federal Claims ("RCFC"), as well as RCFC 12(b)(6). As plaintiff, Union Pacific bears the burden of proving by a preponderance of the evidence that this court has jurisdiction to consider its claim. *See McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In determining whether jurisdiction exists, federal courts must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). In reaching a decision on jurisdiction where jurisdictional facts are in dispute, the court may draw upon evidentiary submissions by the parties beyond the matters addressed in the pleadings. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), *overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Cedars–Sinai Med. Center v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993); *Midwest Tube Fabricators, Inc. v. United States,* 104 Fed.Cl. 568, 574 (2012); *Nez Perce Tribe v. United States,* 83 Fed.Cl. 186, 188 (2008).

### ANALYSIS

■ Claims filed under the Tucker Act against the government are barred unless they are filed "within six years after such claim first accrues." 28 U.S.C. § 2501. The predecessor to 28 U.S.C. § 2501 was modified to allow for tolling of the six-year statute of limitations in the Act of March 3, 1863, § 10, 12 Stat. 767 (Rev. Stat. § 1069). Exceptions were made for claims by married women if the claim first accrued during marriage, by persons under the age of twenty-one if the claim accrued during minority, by idiots, lunatics, and insane persons, and by persons beyond the seas at the time the claim accrued. These exceptions were interpreted narrowly to the exclusion of all other disabilities, including such ordinary ones as "sickness, surprise or inevitable accident." *Kendall v. United States,* 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1883); *see also Finn v. United States,* 123 U.S. 227, 232, 8 S.Ct. 82, 31 L.Ed. 128 (1887) ("[T]he statute ... makes it a condition or qualification of the

right to a judgment against the United States that—except where the claimant labors under some one of the disabilities *specified in the statute*—the claim must be put in suit ... within six years" (emphasis added)).

The modern incarnation set out in 28 U.S.C. § 2501 mirrors the original language structurally, and precedents construing and applying the old statute were applied to the new. *See Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (refusing to toll the statute of limitations on the basis of the plaintiff being stuck in a war zone, citing *Kendall*, 107 U.S. at 125, 2 S.Ct. 277, for the proposition that "[t]he court cannot superadd to those [exceptions to the statute] enumerated"). However, in place of the lengthy list of somewhat archaically expressed disabilities, Section 2501 now provides for only two exceptions to the statute of limitations: instances of legal disability and cases where the party is beyond the seas at the time of accrual. 28 U.S.C. § 2501. Neither of those situations applies here; at no juncture has Union Pacific suffered from legal disability or been beyond the seas. As with the original statute, Section 2501 has been construed not to permit any additions to the enumerated disabilities, even on the grounds of equity. *See John R. Sand*, 552 U.S. at 136, 128 S.Ct. 750 ("[T]he statute's limitations period [is] 'jurisdictional' and not susceptible to equitable tolling." (internal citation omitted)); *Soriano*, 352 U.S. at 276, 77 S.Ct. 269 ("Congress was entitled to assume that the limitation period it prescribed meant just that period and no more ... And this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."); *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1382 (Fed.Cir.2012) ("[S]ection 2501 sets forth an 'absolute' time limit for filing suit in the Court of Federal Claims. Because [S]ection 2501's time limit is jurisdictional, the six-year limitations period cannot be extended even in cases where such an extension might be justified on equitable

grounds." (emphasis in original) (internal quotes and citations omitted) (quoting *John R. Sand*, 552 U.S. at 135, 128 S.Ct. 750)).

Nonetheless, Union Pacific contends that the government has waived its right to defend on the basis of the statute of limitations. This contention is grounded in part on a form of estoppel, relying on the government's posture in the district court litigation. Pl.'s Opp'n at 6 ("[T]he government acknowledged repeatedly in the Oklahoma litigation that jurisdiction was proper in the district court."). Union Pacific cites various submissions made by the government to the district court, in averring that "[a]lthough the [g]overnment made a fleeting reference to the Court of Federal Claims in early briefing, it reversed course sharply after Union Pacific demonstrated Oklahoma's recognition of claims for the tort of negligent breach of contract." *Id.* The district court found that it had jurisdiction based on these submissions, stating "[a]s [d]efendant seems to admit in its Reply ... [p]laintiff's claims sound in tort rather than contract. Therefore, jurisdiction is proper in this court." Order Denying Def.'s Mot. to Dismiss, *Union Pac. R.R. v. United States ex rel. U.S. Army Corps of Engineers*, No. 06–cv–94 (E.D. Okla. July 3, 2006), ECF No. 24 (attached to Pl.'s Opp'n as Ex. H).[4]

This claim of waiver or estoppel has a basis in fact but is unavailing in law. Subject matter jurisdiction cannot be established by consent, waiver, or estoppel. *See Finley v. United States*, 490 U.S. 545, 559, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ("Objections to a federal court's jurisdiction over a case cannot be waived."), *superseded on other grounds by statute*, 28 U.S.C. § 1367, *as stated in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 547, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *FloorPro*, 680 F.3d at 1380–81 ("Every civil action against the United States is barred unless the complaint is filed within six years of the time a right of action first accrues. This six-year limitations period is jurisdictional and may not be

4. Union Pacific acknowledges, as it must, that the district court's jurisdictional ruling was reversed on appeal, after the government retrieved and pressed its contention that Union Pacific's

negligent-breach-of-contract claim was premised on contract, not tort. Pl.'s Opp'n at 8 (referring to *Union Pac.*, 591 F.3d at 1320).

waived or tolled." (internal citation omitted)). In short, the government's assent to jurisdiction in the district court is irrelevant.

Regrettably, this is yet another case where the government has "tak[en] entirely irreconcilable positions regarding the jurisdiction of the federal courts." *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed.Cir.2012). As in other such instances, "[t]he [g]overnment's shifting positions have led to an unnecessary waste of money and judicial resources, and are manifestly unfair to the litigant." *Id.* Draconian as it may be, this court nonetheless is compelled by law to ignore the government's prior acceptance of jurisdiction in the district court until more than six years had passed from the culvert collapse and the advent of Union Pacific's claim in this court.

 Perhaps as a last resort, Union Pacific presses an argument that its contractual claim did not accrue until 2007, "when it received 'as built' drawings confirming both that the [Corps] had misused metal culverts instead of contractually-required monolithic reinforced concrete and that the railroad had not approved that deviation from the Contract's specifications." Pl.'s Opp'n at 9.

 Ordinarily, "[f]or breach of contract actions, the claim accrues at the time of the breach." *Ram Energy, Inc. v. United States*, 94 Fed.Cl. 406, 410 (2010); *see also FloorPro*, 680 F.3d at 1381 ("In general, a cause of action against the government accrues 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action. The issue of whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue.'" (internal citations omitted)). Here, the breach turned on the government's installation of metal culverts rather than reinforced concrete culverts, thus contravening the terms of its contract with the Katy. In effect, Union Pacific's claim arguably accrued in 1964 when construction was completed. Once the non-conforming culverts had been installed, the government's breach had occurred.

 Union Pacific urges that a suspension of accrual is appropriate here because "[the Corps'] misuse of metal culverts was unknowable to [the Katy] and Union Pacific." Pl.'s Opp'n at 9. That argument has a well-recognized legal basis. Accrual may be suspended and thus "prevent the running of the limitations period 'when an accrual date has been ascertained, but the plaintiff does not know of the claim.'" *Ram Energy*, 94 Fed. Cl. at 411 (citing *Ingrum v. United States*, 560 F.3d 1311, 1314–15 (Fed.Cir.2009)); *see also Young v. United States*, 529 F.3d 1380, 1385 (Fed.Cir.2008) ("It is a plaintiff's knowledge of the facts of the claim that determines the accrual date."). It follows, then, that the date of breach is not always the same as the date of accrual because accrual may be suspended depending on when the facts of the breach were, or should have been, known. Although the Katy and the Union Pacific had access to the contract itself at all relevant times, the salient factual question is when Union Pacific or its predecessor knew or should have known that the contract had been breached. Once the metal culverts were discovered, the readily accessible contract should have led to the knowledge that such culverts were installed contrary to its express terms.

The Katy was entitled under the contract to have an engineer present at all stages of construction. Compl. at 7. In that respect, the contract provided that "[t]he [Katy's] engineer shall have no direction or control of the work performed by the [g]overnment, but shall have the right to refuse acceptance of any such work which is not performed in accordance with approved plans and specifications." Contract at 27 (Art. 9.b). An on-site engineer could have observed the government installing metal culverts instead of reinforced concrete culverts. Additionally, upon completion of each "operable sector of the relocated railroad," the contract required the Katy to "make a detailed inspection" to determine whether "the completed sector of the railroad [was] constructed in accordance with the approved plans and specifications." Contract at 27 (Art. 9.c). Union Pacific rejects any accrual date based on construction,

however, arguing that because "there was no water present in the adjoining reservoir during the construction process, ... it would not have been apparent to [the Katy]'s resident engineer that the [g]overnment had installed metal culverts improperly below the water line." Compl. at 7. Drawing all reasonable inferences in favor of the plaintiff, the court concludes from this assertion that at the time of the breach, it was likely unknowable to the Katy that any breach had occurred. Consequently, the claim did not accrue in 1964.

The next potential date of accrual is on or shortly after May 23, 2003, the date of the train derailment. Compl. at 2. On the day of the accident, the collapse of the embankment was visible to the naked eye; furthermore, the culverts were apparently immediately identified as the likely cause of the accident. At least a small upper portion of the metal ends of these culverts also were visible above the water line at the time of the collapse. Although that portion was covered by "dense vegetation" which shielded them from casual view from the railway itself, the culverts were accessible by clambering down the embankment or by taking a boat onto the lake. Admin. Claim Attach. 1 (Basis of Claim), at 2. Promptly after the derailment, Mr. Kirk personally viewed the culverts from both land and water. See Kirk Dep. at 43:9–10, 44:1–4. At this point, it was evident that the culverts were made of metal and not of concrete. That knowledge by itself, however, would not establish that a breach had occurred.

Union Pacific's investigation of the derailment proceeded thereafter, and that investigation, concluded in May 2005, drew a connection between the materials of construction for the culverts and the contractual specifications. Union Pacific's "Basis of Claim" appended to and incorporated in its administrative claim rested upon the government's installation of a metal culvert in direct contradiction of the contract between the government and the Katy. See Admin. Claim Attach. 1 (Basis of Claim), at 1. In the Basis of Claim, Union Pacific recited its knowledge of the government's breaching action both as a factual matter and in terms of the pertinent portions of the Contract. Post-derailment construction evaluations had established that the culverts "fell within the elevation which required reinforced concrete culverts." Id. at 1. Consequently, Union Pacific alleged affirmatively that the Corps had breached the contract by failing to use monolithic reinforced concrete culverts, while noting that the Katy had "never received any documentation of [the as-built installation.]." Id. at 2. It is thus evident that by the time Union Pacific filed the administrative claim in 2005, its officials had gained knowledge that a breach had occurred. The claim in district court alleging a negligent breach of contract essentially drew upon the Administrative Claim and the prior investigation and was filed on March 6, 2006.

Nonetheless, the date of accrual urged by Union Pacific is February 2007, when the government produced to Union Pacific in the district court case "as-built" drawings confirming that the Corps had installed metal culverts in deviation of the contract. Pl. Opp'n at 9. According to Union Pacific, its predecessor "did not know (and could not have known) that the [g]overnment had made an unauthorized deviation from the Contract's terms." Id. Additionally, the as-built drawings showed that the Katy's engineer had not approved the deviation and thus eliminated a potential defense on the government's part. By February 2007, however, Union Pacific had already premised its Administrative Claim on negligent breach of contract and had thereafter submitted its complaint to the district court alleging that claim. In short, the discovery production of the as-built drawings served to refine and support a claim that had already been pleaded with sufficient specificity, but it did not give rise to accrual of any new claim. Furthermore, a plaintiff need not know *every* attendant fact for his or her cause of action to accrue. It is enough that under an objective standard the facts of the claim itself were known to the plaintiff. See *FloorPro*, 680 F.3d at 1381. The as-built drawings—while relevant to the plaintiff's case in chief—were not objectively necessary for an understanding of the plaintiff's basic claim.

Consequently, as a factual matter, the latest possible date of accrual for this cause of action is May 13, 2005, when the Administrative Claim was filed. Given the six-year statute of limitations, the absence of any tolling, and the impossibility of waiver, the claim expired on or before May 13, 2011, well before this action was initiated on February 9, 2012.[5] Like the proverbial doornail, the claim in this case was dead before the action in this court was filed.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is GRANTED. The action shall be dismissed for lack of subject matter jurisdiction under RCFC 12(b)(1). The clerk will enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

---

**5.** In light of this result, the court sees no need to consider the effect of the release clause in the contract, a matter which was addressed by Judge Hartz' opinion for the Tenth Circuit in the context of Union Pacific's negligent-maintenance claim. *See Union Pacific,* 591 F.3d at 1320–22. Otherwise, a serious question would arise regarding the applicability of the release clause in a contract-breach context because the release arguably only operates with respect to "work to be performed by the [g]overnment *as herein provided."* Contract at 29 (Art. 10) (quoted more fully *supra,* at 79) (emphasis added). That is, the release would be effective insofar as the construction work comported with the terms of the contract, but not otherwise.