**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 21, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ROBERT McINTYRE, M.D.,

　　Plaintiff - Appellant,

v.

UNITED STATES INDIAN HEALTH
SERVICE; VISTA STAFFING
SOLUTIONS, INC.,

　　Defendants - Appellees.

No. 24-5148
(D.C. No. 4:23-CV-00421-JDR-CDL)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

Vista Staffing Solutions placed Dr. Robert McIntyre at the Chinle, Arizona clinic

run by the United States Indian Health Service ("IHS"). IHS fired him and then Vista

terminated its contract with him. Dr. McIntyre sued Vista and IHS. The district court

dismissed, holding that Dr. McIntyre failed to state a claim against Vista and that it

lacked subject matter jurisdiction over his claims against IHS. Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

### A. *Factual History*[1]

1. **The Placement Agreement**

Dr. McIntyre used Vista's medical staffing placement services for 12 years.  In January 2021, he signed a contract with Vista to provide psychiatric services to Vista's clients.  Vista placed Dr. McIntyre at the IHS clinic located on the Chinle Reservation in Arizona.  IHS, a Vista client, was not a party to the placement agreement.

The placement agreement's paragraphs 4 and 23 are most relevant here.  Under paragraph 4:

> [IHS] may cancel any scheduled placement without cost by giving [Vista] no less than thirty (30) days' written notice.  If [IHS] reasonably finds the performance of [Dr. McIntyre] to be unacceptable for reasons of professional competence or personal conduct, it shall give notice to [Vista] and may then remove [Dr. McIntyre] from the [Chinle Clinic] immediately. . . .

Aplee. Vista App. at 39 ¶ 4.  Paragraph 23 states:

> [Vista] may terminate this Agreement, and any or all placements of [Dr. McIntyre], immediately by oral or written notice in the event of Professional's death, the denial or revocation of any hospital privileges for Professional, the revocation or suspension of Professional's licensing as a Professional in any state, or the request by a Client that

---

[1] This factual history derives from the allegations in Dr. McIntyre's complaint and documents referenced in the complaint.  *See Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (noting that we "accept[ ] as true all well-pleaded factual allegations in the complaint" on an appeal from a motion to dismiss and "may consider not only the complaint, but also . . . documents incorporated into the complaint by reference").

> Professional be removed for any reason during the term of a placement.

*Id.* at 41 ¶ 23.  Utah law governs the interpretation of the placement agreement.  *Id.* at 41 ¶ 24(f).

## 2. Dr. McIntyre and the Chinle Clinic

Dr. McIntyre was assigned to the Chinle Clinic in January 2021.

In August 2021, he requested a Covid-19 vaccine medical exemption from the Chinle Clinical Medical Director, Dr. Eric Ritchie.  In support, Dr. McIntyre provided documentation from his personal physician.  Dr. Ritchie denied the request without explanation.

Sometime before September 2021, Dr. McIntyre learned of a Chinle Clinic pharmacist's alleged sexual misconduct.  Dr. McIntyre alleged that Dr. Ritchie and "leadership at Chinle" failed to take any "remedial" or "curative action."  *Id.* at 8-9, 17, 20-21.

On September 16, 2021, Dr. McIntyre "formally blew the whistle on Dr. Ritchie" and the Chinle Clinic.  *Id.* at 9.  He emailed an investigator at the Department of Health and Human Services' Office of Inspector General ("OIG") detailing his complaints, including Dr. Ritchie's denial of Dr. McIntyre's Covid-19 vaccine exemption request and his failure to address the pharmacist's alleged misconduct.

In early October 2021, Dr. Ritchie denied Dr. McIntyre's request to take a basic life support class in Chinle rather than in Albuquerque or Flagstaff.

### 3. Cancellation and Termination

In late October 2021, IHS cancelled Dr. McIntyre's Chinle Clinic placement. IHS notified Vista of its decision, citing Dr. McIntyre's "lack of professionalism" and "failure to maintain a positive work environment." *Id.* at 30, 19 (quotations omitted). Shortly thereafter, Vista terminated its placement agreement with Dr. McIntyre.

### B. *Procedural History*

### 1. The Complaint

Dr. McIntyre sued Vista and IHS for breach of contract and IHS for unlawful retaliation and creating a hostile work environment. He claimed the district court had subject matter jurisdiction under "28 U.S.C. § 451, § 1331, § 1337, § 1343, 41 U.S.C. § 4712, 5 U.S.C. § 2302, and 10 U.S.C. § 2409." *Id.* at 7.

#### a. Vista

Citing paragraph 4 of the placement agreement, Dr. McIntyre alleged that Vista owed him a "duty under the [placement agreement] to inquire into any allegations of professional competence or personal conduct transmitted by any client to see if there was a bonafide reasonable basis for sudden ending of [his] placement." *Id.* at 10-11. He further alleged that Vista terminated the agreement without conducting any investigation and thereby breached the placement agreement.

Dr. McIntyre did not explicitly allege that Vista breached the implied covenant of good faith and fair dealing.

#### b. IHS

Dr. McIntyre alleged three claims against IHS.

4

First, quoting paragraph 4 of the placement agreement, Dr. McIntyre alleged that "IHS breached its contract with Vista . . . when it failed to contemporaneously 'reasonably find the performance of [Dr. McIntyre] to be unacceptable for reasons of professional competence or personal conduct.'" *Id.* at 12. He did not specify the terms of the alleged contract between IHS and Vista and did not attach any such agreement to the complaint.[2] He claimed to be a third-party beneficiary of the contract and sought recovery for breach.

Second, Dr. McIntyre alleged that IHS unlawfully retaliated against him for his email to the OIG. The alleged retaliation included (1) the denial of Dr. McIntyre's request for a Covid-19 vaccine medical exemption,[3] (2) the denial of his request to take the basic life support class in Chinle, and (3) the cancellation of his placement.[4]

Third, Dr. McIntyre alleged Dr. Ritchie's actions and the Chinle Clinic's failure to address the pharmacist's sexual misconduct created a hostile work environment.[5]

Dr. McIntyre alleged he suffered more than $75,000 in damages.

---

[2] At oral argument, Dr. McIntyre's counsel conceded that a contract between IHS and Vista is not in the record. Oral Arg. at 1:00-56.

[3] Dr. Ritchie denied this request before the OIG email. The complaint did not explain how the denial could have been in retaliation for the email.

[4] Dr. McIntyre based his retaliation claim on 41 U.S.C. § 4712, 5 U.S.C. § 2302(b)(8), 10 U.S.C. § 4701, 42 U.S.C. § 1395, 42 U.S.C. § 18116, 18 U.S.C. § 242, and 25 C.F.R. § 11.448. In his complaint, he referred to 10 U.S.C. § 4701 by its former statute number, 10 U.S.C. § 2409.

[5] The complaint did not cite a statute on which this claim was based.

2. **Motions to Dismiss**

    *a. Vista's motion*

Vista moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It argued that its failure to investigate IHS's reasons for cancelling Dr. McIntyre's placement before exercising its termination rights did not breach the placement agreement or the implied covenant of good faith and fair dealing.

In response, Dr. McIntyre argued that Vista violated the implied covenant of good faith and fair dealing. He did not argue that Vista violated the placement agreement's express terms.

    *b. IHS's motion*

IHS moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). It argued that it was immune from suit under the sovereign immunity doctrine and that Dr. McIntyre had failed to establish waiver of sovereign immunity.

In response, Dr. McIntyre asserted that IHS's violation of various statutes and one regulation waived sovereign immunity. He also said the Tucker Act waived sovereign immunity and provided the district court with subject matter jurisdiction.

3. **District Court Opinion**

The district court granted both motions.

It held Vista's failure to investigate IHS's reasons for cancelling Dr. McIntyre's placement did not violate the placement agreement or the implied covenant of good faith and fair dealing.

6

It further held that IHS had sovereign immunity from suit and that neither the Tucker Act, the Federal Tort Claims Act, nor Dr. McIntyre's other cited statutes and regulation granted the court subject matter jurisdiction.

Dr. McIntyre timely appealed.

## II.  DISCUSSION

### A. *Breach Claims Against Vista*

"We review de novo a district court's grant of a motion to dismiss for failure to state a claim." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024).  We "accept a complaint's well-pleaded allegations as true, viewing all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 1.  Breach of the Placement Agreement

Dr. McIntyre has waived the issue of whether Vista breached the placement agreement.

"We have held that a failure to raise an issue in an opening brief waives that issue, and that we will not entertain issues raised for the first time on appeal in an appellant's reply brief." *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) (quotations omitted).

When an appellee fails to raise preservation in its response brief, we may find waiver of the appellant's waiver, but this decision is discretionary. *United States v. Rodebaugh*, 798 F.3d 1281, 1314 (10th Cir. 2015) (citing *United States v. McGehee*, 672 F.3d 860, 873-74 n.5 (10th Cir. 2012)). Thus, we may excuse an appellee's failure to argue preservation and find the issue waived. *Id.* at 1314-17; *see also McGehee*, 672 F.3d at 873-74 n.5

In his complaint, Dr. McIntyre alleged that Vista owed him a duty "to inquire into any allegations of professional competence or personal conduct transmitted by any client to see if there was a bonafide reasonable basis for sudden ending of a placement." Aplee. Vista App. at 11; *see also id.* at 16. But in his opening brief, Dr. McIntyre does not argue that Vista's failure to investigate constituted a breach of the express terms of the placement agreement. Vista addresses the complaint's failure-to-investigate theory in its response brief, but does not address preservation, Aplee. Vista Br. at 7-8, triggering whether it has waived Dr. McIntyre's waiver. We exercise our discretion to say no.

We do so in part because, in his reply brief, Dr. McIntyre abandons his theory that Vista should have investigated IHS's reasons for cancelling his placement. He instead asserts, under paragraph 4 of the placement agreement, that IHS—not Vista—should have produced evidence of Dr. McIntyre's unacceptable performance, Aplt. Reply Br. at 2-3, and that Vista's failure to wait for IHS to produce this evidence constituted breach, *id.* at 2-5.

Dr. McIntyre thus has not argued his complaint's failure-to-investigate theory in either his opening or reply briefs. Also, applying waiver of the waiver "would be

manifestly unfair" to Vista, which, "under our rules, has no opportunity for a written response" to Dr. McIntyre's new theory of breach. *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) (quoting *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007)). And we would lack the "benefits of the adversarial process." *Id.* at 1197-98.[6]

For the foregoing reasons, we conclude that Dr. McIntyre has waived his challenge to the dismissal of his claim that Vista breached the express terms of the placement agreement.

2. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Dr. McIntyre argues that good faith required Vista, before exercising its termination rights, to investigate IHS's allegations that his professional performance was unacceptable. Aplt. Br. at 21-25. He contends the district court erred by "strictly reading" the placement agreement and failing to construe its terms in light of the implied covenant of good faith and fair dealing. *Id.* at 20-21.[7] We disagree.

---

[6] We may find waiver on yet another ground. Although Dr. McIntyre alleged in his complaint that Vista breached the placement agreement, he abandoned this argument in his opposition to Vista's motion to dismiss in district court. *See C1.G. ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2021) (finding the plaintiff's constitutional claims abandoned when he failed to address them in his response to the defendant's motion to dismiss). When parties attempt to "reassert an argument that [they] *previously raised and abandoned below*," we typically find the issue waived. *McGehee*, 672 F.3d at 873 (quoting *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008)).

[7] In his opening brief, Dr. McIntyre briefly suggests that paragraph 23 of the placement agreement is itself contrary to the implied covenant. Aplt. Br. at 24-25. But he fails to cite any case law and has waived this argument as inadequately briefed. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (quotations omitted)); *Pignanelli v. Pueblo Sch. Dist.*

*a. Utah law on implied covenant*

Under Utah law, a contract is subject to the implied covenant of good faith and fair dealing. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). "The covenant operates by 'inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute.'" *Vander Veur v. Groove Ent. Techs.*, 452 P.3d 1173, 1177 (Utah 2019) (quoting *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011)); *Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 450 (Utah Ct. App. 1994) *cert. denied*, 899 P.2d 1231 (Utah 1995).

Good faith "requires a party in a contract to perform 'consistent with the agreed common purpose and the justified expectations of the other party,'" *Cheney v. Hinton Burdick Hall & Spilker, PLLC*, 366 P.3d 1220, 1225 (Utah Ct. App. 2015) (quoting *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1239 (Utah 2004)), and refrain from intentionally "injur[ing] the other party's right to receive the benefits of the contract," *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004) (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991)). Utah courts determine "the purpose, intentions, and expectations [of the parties] by considering the contract language and the course of dealings between and conduct of the parties." *Oakwood Vill.*, 104 P.3d at 1240 (quotations omitted).

---

*No. 60*, 540 F.3d 1213, 1217 (10th Cir. 2008) (holding appellant waived her due process argument by failing to cite to any legal authority or record evidence in support).

"Although 'a covenant of good faith and fair dealing inheres in almost every contract, some general principles limit the scope of the covenant.'" *Vander Veur*, 452 P.3d at 1177 (quoting *Oakwood Vill.*, 104 P.3d at 1240).  The implied covenant may not be construed "to establish new, independent rights or duties to which the parties did not agree at the outset." *Id.* (quotations omitted).  Nor may "it create rights and duties inconsistent with express contractual terms." *Id.* (quotations omitted); *see also Brehany*, 812 P.2d at 55 (the implied covenant cannot be invoked to "nullify a right granted by a contract to one of the parties.").

### b. Analysis

In his complaint, Dr. McIntyre does not expressly allege that Vista breached the implied covenant of good faith and fair dealing.  Regardless of whether he should have done so,[8] we conclude the district court correctly determined that Vista did not breach the implied covenant.

---

[8] In a recent case, judges on the Utah Court of Appeals, in separate writings, acknowledged that "[t]here exists some apparent tension between our statement that a claim for breach of the implied covenant 'is an independent cause of action' and our supreme court's statement that '[a] violation of the [implied] covenant is a breach of the contract.'" *Olé Mexican Foods Inc. v. J & W Distrib. LLC,* 549 P.3d 663, 673 n.4 (Utah Ct. App. 2024) (alterations in original) (citations omitted), *cert. denied* 558 P.3d 88 (Utah 2024); *see also id.* at 678 (concurrence) ("I likewise acknowledge that there 'exists some apparent tension' in the caselaw.")

The judges expressed differing views about whether a complaint alleging breach of the express terms of a contract must also plead breach of the implied covenant of good faith and fair dealing.  *Compare id.* at 673 n.4 ("I would encourage litigants to consider whether it is truly necessary to include in their complaints a separate cause of action, in addition to a general claim for breach of contract, for breach of the implied covenant of good faith and fair dealing."), *with id.* at 678 (concurrence) ("I disagree with the suggestion that it would be 'simpler and cleaner for litigants to abandon the practice of

<u>First</u>, the placement agreement lacks language imposing a duty on Vista to investigate IHS's reasons for cancellation before exercising its own termination rights. Under Utah law, we cannot read the placement agreement to "establish new, independent rights or duties to which the parties did not agree at the outset." *Vander Veur*, 452 P.3d at 1177 (quotations omitted).

<u>Second</u>, implying a duty to investigate would be inconsistent with paragraph 23, which permits Vista to "immediately" terminate the placement agreement upon a client's request that a physician be removed "for any reason." Aplee. Vista. App at 41 ¶ 23; *Vander Veur*, 452 P.3d at 1177. Requiring an investigation would "nullify" Vista's right to terminate the contract immediately and would constitute a "substantive limitation" on Vista's right to terminate when a client cancels a professional's placement. *Brehany*, 812 P.2d at 55.

<u>Third</u>, Vista's exercise of its termination rights did not undermine Dr. McIntyre's justified expectations under the placement agreement. Dr. McIntyre argues that, considering his and Vista's long professional history, good faith required Vista to investigate "the factual basis for conclusions included in the [cancellation] notice." Aplt. Br. 21-22. But neither the placement agreement's language nor the parties' course of dealing supports Dr. McIntyre's argument. *Oakwood Vill.*, 104 P.3d at 1240 (the parties' justified expectations are determined by the contracts language and the parties' course of dealing).

---

pleading claims for breach of the implied covenant separately from claims for breach of . . . the same contract.'") (quotations omitted).

As discussed above, paragraph 23 granted Vista broad termination rights, Aplee. Vista. App at 41 ¶ 23, precluding any claim that Dr. McIntyre had a justifiable expectation that Vista would investigate IHS's reasons for cancelling his placement. Further, the complaint fails to allege facts about Dr. McIntyre and Vista's course of dealing. *Oakwood Vill.*, 104 P.3d at 1240. In particular, the complaint fails to allege that Vista's practice was to investigate its clients' complaints against Dr. McIntyre or the other medical staff it placed.

Vista's termination of the placement agreement thus did not violate the implied covenant of good faith and fair dealing.

\* \* \* \*

Because Dr. McIntyre waived his argument that Vista breached the placement agreement and because Vista did not violate the implied covenant of good faith and fair dealing, we affirm the district court's dismissal of Dr. McIntyre's claim against Vista for failure to state a claim.

### B. *Claims Against IHS*

The district court dismissed Dr. McIntyre's claims against IHS for lack of subject matter jurisdiction, which we review de novo. *Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). "The burden of establishing a federal court's subject matter jurisdiction rests upon the party asserting jurisdiction." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quotations omitted); *see also Kansas v. SourceAmerica*, 874 F.3d 1226, 1240 (10th Cir. 2017)).

1. **Legal Background**

"It is elementary that [the] United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotations omitted). Sovereign immunity also shields federal agencies and federal officers acting in their official capacities. *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002).

The party suing the federal government must show an "explicit waiver of sovereign immunity." *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (quoting *Lonsdale v. United States*, 919 F.2d 1440, 1444 (10th Cir. 1990)). "[A] waiver of sovereign immunity must be unequivocally expressed in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quotations omitted). Statutes that confer general jurisdiction on federal courts, such as 28 U.S.C. § 1331, are insufficient to waive sovereign immunity. *See Lonsdale*, 919 F.2d at 1443-44.

Even when a statute waives the federal government's sovereign immunity, it must still grant the district court subject matter jurisdiction. *See Union Pac. R.R. Co. v. United States ex rel. U.S. Army Corps of Eng'rs*, 591 F.3d 1311, 1320 (10th Cir. 2010) (affirming the district court's dismissal of plaintiff's breach of contract claim against the United States for lack of subject matter jurisdiction because the Tucker Act, though it waived sovereign immunity, vested the Court of Federal Claims with exclusive jurisdiction over such claims); *see also Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1298-99 (10th Cir. 2009).

14

2. **Analysis**

Dr. McIntyre relied on multiple statutes to establish jurisdiction. For most of them, he failed to show a waiver of sovereign immunity. For the ones that waive sovereign immunity, he failed to show the district court otherwise had subject matter jurisdiction over his IHS claims.

   a. *The Tucker Act*

Dr. McIntyre argues the district court had subject matter jurisdiction under the Tucker Act. Aplt. Br. at 11-12.[9] We disagree.[10]

The Tucker Act, 28 U.S.C. § 1491, waives sovereign immunity for breach of contract claims against the federal government. *Union Pac.*, 591 F.3d at 1313-14. Federal district courts and the Court of Federal Claims have concurrent jurisdiction over such claims for damages equal to or less than $10,000. *Id.* at 1314; *see also* 28 U.S.C. § 1346(a)(2). But the Court of Federal Claims has exclusive jurisdiction over claims exceeding $10,000. *Union Pac.*, 591 F.3d at 1314.

---

[9] The complaint did not allege a Tucker Act claim. *See* Oral Arg. 2:20-3:02 (Dr. McIntyre conceding he did not plead a Tucker Act claim). But Dr. McIntyre presented his Tucker Act argument in his opposition to IHS's motion to dismiss and the district court addressed it.

[10] The following discussion assumes there was a contract between IHS and Vista. In his complaint, Dr. McIntyre alleged that IHS breached a contract with Vista and that he was a third-party beneficiary. But, as noted above, the complaint did not specify the terms of the alleged contract, and no such agreement was attached to the complaint or included in the record.

Dr. McIntyre's breach of contract claim against IHS appears to fall within the Tucker Act's waiver of sovereign immunity, 28 U.S.C. § 1491(a), but the Court of Federal Claims has exclusive jurisdiction because the alleged damages exceed $10,000. *Union Pac.*, 591 F.3d at 1314; 28 U.S.C. § 1346(a)(2).  The district court therefore lacked jurisdiction under 28 U.S.C. § 1491(a)(1).[11]

Dr. McIntyre counters with § 1491(b)(1), which permits interested parties to protest the solicitation of contract bids by the United States.  *See* 28 U.S.C. § 1491(b)(1). But he did not allege a bid protest claim.  Even if he did, as of 2001, federal district courts no longer have concurrent jurisdiction over bid protest claims.  *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001).  Now, "the Court of Federal Claims [has] exclusive jurisdiction to hear [bid protest] Tucker Act claims." *SourceAmerica*, 874 F.3d at 1241.

---

[11] Under 28 U.S.C. § 1631 when a district court lacks jurisdiction over a case, it may transfer the case to a court with jurisdiction "if [transfer] is in the interest of justice."

In district court, IHS argued that Dr. McIntyre's Tucker Act claim should not be transferred to the Court of Federal Claims.  Aplt. Supp. App. at 12.  Dr. McIntyre agreed, and the district court dismissed without prejudice.  *Id.* at 27; Aplt. Br. at 41.

On appeal, IHS again argues the claim should not be transferred.  Aplee. IHS Br. at 6.  Now, in his reply brief, Dr. McIntyre says it should (referring to his retaliation claim rather than his Tucker Act contract claim).  Aplt. Reply Br. at 11-12.  But he does not argue the district court erred in dismissing the claim without transferring it.  Even if he did, any error would have been an invited one because Dr. McIntyre urged the district court not to transfer.  *See United States v. McBride*, 94 F.4th 1036, 1041 (10th Cir. 2024) (*"*Generally, 'the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt.'" (quoting *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005)).  We therefore see no reason to address the transfer issue on appeal.

   *b. The Whistleblower Protection Act*

  Dr. McIntyre asserts the district court had jurisdiction under the Whistleblower

Protection Act.  The Act prohibits certain federal agencies from retaliating against

employees for protected activities, 5 U.S.C. § 2302(b)(8), and waives the government's

sovereign immunity.  *See Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1339 (Fed. Cir. 2001)

(the WPA includes a limited waiver of sovereign immunity).  But the Act includes other

jurisdictional requirements.

  "WPA claims generally may only be brought under the civil service procedures of

the Civil Service Reform Act."  *McKinney v. United States*, 724 F. App'x. 628, 630

(10th Cir. 2018) (unpublished);[12] *see also Steele v. United States*, 19 F.3d 531, 533

(10th Cir. 1994).  The CSRA requires an aggrieved employee to seek corrective action

from "the [Office of] Special Counsel" and then "the [Merit Systems Protection] Board."

5 U.S.C. § 1214(a)(3); 5 U.S.C. § 1221(a).  "Congress . . . clearly indicated that the

exhaustion requirement outlined in § 1214(a)(3) is jurisdictional."  *Acha v.*

*Dep't of Agric.*, 841 F.3d 878, 883 n.3 (10th Cir. 2016); *see also Eng. v. Merit Sys. Prot.*

*Bd.,* No. 23-9526, 2023 WL 8851292, at *4 (10th Cir. Dec. 21, 2023) (unpublished).

  Dr. McIntyre failed to seek the required corrective action.  Even if he had, the

district court still would have lacked subject matter jurisdiction because, petitions for

review of MSPB decisions generally may be filed only in federal circuit courts.  *See* 5

U.S.C. § 7703(b)(1)(B); *see also Teufel v. Dep't of the Army*, 608 Fed. App'x. 705, 706

---

  [12] We cite unpublished opinions in this order and judgment for their persuasive
value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

(10th Cir. 2015) (unpublished) (exercising jurisdiction under 5 U.S.C. § 7703(b)(1)(B) to review the MSPB's final decision denying retaliation claims).

### c. Various statutes

Dr. McIntyre argues that various other statutes and one regulation waived IHS's sovereign immunity. Aplt. Br. at 11-18; Aplt. Reply Br. at 13-20.[13] We disagree.

He relies on the antiretaliation provisions in the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 4701, and the National Defense Authorization Act, 41 U.S.C. § 4712, which provide whistleblower protection for employees of various federal contractors and subcontractors. But these statutes permit suit only against a government contractor or subcontractor, 41 U.S.C. § 4712(c)(2); 10 U.S.C. § 4701(c)(3), not against the government itself, so they do not waive the government's sovereign immunity.

Dr. McIntyre also relies on 18 U.S.C. § 242 and 22 C.F.R. § 11.448, which criminalize certain behavior by government officials. *See* 18 U.S.C. § 242 (prohibiting government officials from depriving people of their constitutional rights and privileges); 25 C.F.R. § 11.448 (prohibiting government officials from committing certain acts on Indian land). But neither waives the government's sovereign immunity and both are plainly inapplicable to the facts of this case.

---

[13] In his complaint, Dr. McIntyre alleged that IHS also violated 42 U.S.C. §§ 1395, 18116. On appeal, Dr. McIntyre does not address these statutes until his reply, *see* Aplt. Reply Br. at 18, 20, and has waived reliance on them. *See Leffler*, 942 F.3d at 1197 (declining to consider issues raised for the first time in appellant's reply brief).

### d. General and Supplemental Jurisdiction Statutes

Dr. McIntyre asserts that the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a). Aplt. Br. at 1.[14] Section 1331 grants district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.§ 1331. It does not waive the government's sovereign immunity. *See Lonsdale*, 919 F.2d at 1443-44. Section 1337(a) grants district courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). Its grant of general jurisdiction is also insufficient to waive the government's sovereign immunity. *Lonsdale*, 919 F.2d at 1443-44*; Cooper*, 566 U.S. at 290.

Finally, Dr. McIntyre invokes 28 U.S.C. § 1367(a) for the first time in his reply brief. Aplt. Reply Br. at 10. It grants federal courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Dr. McIntyre asserts that because his

---

[14] On Appeal Dr. McIntyre also asserts that the district court had subject matter jurisdiction under 28 U.S.C. § 1344. This statute was not cited as a basis for the district court's jurisdiction in Dr. McIntyre's complaint, nor argued during the motion to dismiss. And Dr. McIntyre does not argue plain error on appeal. Therefore, we find the issue waived. *Leffler*, 942 F.3d at 1196 ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise.").

claims against IHS and Vista are "intertwined" and because the district court had diversity jurisdiction over his claims against Vista, "§ 1367 grant[ed] the Court below supplemental jurisdiction over Dr. McIntyre's claim against IHS."  Aplt. Reply Br. at 10. Again, we disagree.

Dr. McIntyre waived this argument by failing to raise it in his opening brief.  *See Tompkins v. U.S. Dep't of Veterans Affs.,* 16 F.4th 733, 735 n.1 (10th Cir. 2021) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction." (quotations omitted)).

In any event, § 1367(a), as a general jurisdiction statute, cannot override sovereign immunity.  *See Mitchell*, 445 U.S. at 538 (a waiver of sovereign immunity must be unequivocal); *Lonsdale*, 919 F.2d at 1443-44 (statutes conferring general jurisdiction are insufficient to waive sovereign immunity).  The district court's diversity jurisdiction over Dr. McIntyre's claim against Vista did not authorize supplemental jurisdiction over Dr. McIntyre's claims against IHS.

\*    \*    \*    \*

In sum, Dr. McIntyre has failed to show a waiver of sovereign immunity or otherwise establish the district court's subject matter jurisdiction.  We affirm the district court's dismissal of Dr. McIntyre's claims against IHS.

20

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge